UNITED STATES of America, Plaintiff–Appellee,

v.

Arnulfo C. OLIVO, Defendant–Appellant.

No. 94–5178.

United States Court of Appeals, Tenth Circuit.

Nov. 6, 1995.

---

William D. Lunn, Tulsa, Oklahoma, for appellant.

Allen J. Litchfield, Assistant United States Attorney, Tulsa, Oklahoma (Stephen C. Lewis, United States Attorney, Tulsa, Oklahoma, with him on the brief), for appellee.

Before MOORE, HENRY, and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Arnulfo Olivo appeals from his convictions on a five-count superseding indictment of conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana (21 U.S.C. § 846, 21 U.S.C. § 841(a)(1)), laundering money and aiding and abetting (18 U.S.C. § 1956(a)(1)(B), 18 U.S.C. § 2), engaging in monetary transaction from unlawful activity and aiding and abetting (18 U.S.C. § 1957, 18 U.S.C. § 2), failing to file Internal Revenue

Service Form 8300 and aiding and abetting (26 U.S.C. § 6050I(f)(1)(A), 26 U.S.C. § 7203, 18 U.S.C. § 2), and conspiracy (18 U.S.C. § 371). Olivo contends (1) the court erred in denying his motion to dismiss based on the Speedy Trial Act; (2) the court erred in admitting evidence of a subsequent bad act; (3) the court erred in admitting evidence of prior bad acts; (4) the court erred in allowing the government to lead its principal witness; (5) the court erred in refusing Olivo's request to use misconduct evidence to impeach a government witness; and (6) the court erred in admitting alleged hearsay evidence. We affirm.

From 1987 through 1992, Emilio Castillo imported into Oklahoma approximately 8,320 pounds of marijuana from Mexico and Texas. Olivo and his father, Elisar Olivo, transported some of the marijuana from Texas to Oklahoma. Olivo worked as a truck driver for Scrivner Trucking. Because the company sealed the doors to the freight containers on its trucks, law enforcement officers rarely examined its trucks for contraband. Olivo concealed marijuana, which first had been compressed, wrapped, dipped in tar, and rewrapped, in boxes similar to those shipped by Scrivner, and hid the boxes on northbound trucks. After the trucks safely passed through the checkpoints, they stopped at a prearranged destination where the marijuana was removed and then delivered to David Shanks' farm for weighing and distribution.

Roy Wales distributed small amounts of marijuana for Castillo. Wales had been introduced to Tony Winkle, who worked for an automobile dealer in Oklahoma. Wales knew Winkle sold automobiles for cash without reporting the sales to Internal Revenue Service. Castillo owed Olivo approximately $25,000 for drug transactions and, in April 1992, Castillo asked Wales to purchase with cash a pickup that had been selected by Olivo. Castillo and Wales delivered the truck to Olivo at his home in Donna, Texas.

On November 17, 1992, investigative agents searched Olivo's home, where they found a concealed pit in his barn and seized two large scales, plastic wrapping paper, and 700 grams of marijuana residue. The government initially filed a four-count indict-

ment, but later filed a superseding indictment adding an additional conspiracy count, lengthening the alleged duration of the original conspiracy count, and expanding the original conspiracy count to include three additional defendants.

## I. *Speedy Trial Act*

■ Olivo argues his trial did not commence within the time prescribed by the Speedy Trial Act. "We review the district court's denial of a motion to dismiss under the Act for an abuse of discretion, however we review the district court's compliance with the requirements of the Act *de novo.*" *United States v. Earls,* 42 F.3d 1321, 1323–24 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1800, 131 L.Ed.2d 727 (1995). We accept the district court's factual findings unless they are clearly erroneous. *United States v. Pasquale,* 25 F.3d 948, 950 (10th Cir.1994).

The Act requires that a defendant be tried "within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The seventy-day period is subject to exclusions under § 3161(h); for example, periods of delay resulting from the filing of a pretrial motion, (h)(1)(F), a reasonable period of delay when defendant is joined for trial with a codefendant as to whom the speedy trial clock has not run, (h)(7), and periods of delay resulting from a continuance granted by the judge to serve the "ends of justice," (h)(8). Section 3162(a)(2) provides that if defendant is not brought to trial within the time limit established by § 3161(c), as extended by § 3161(h), the "indictment shall be dismissed on motion of the defendant."

■ On December 9, 1993, the government filed a four-count indictment, charging Olivo with conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, laundering money and aiding and abetting, engaging in monetary transaction from unlawful activity and aiding and abetting, and failure to file Internal Revenue

Service Form 8300. Olivo made his initial appearance on these charges in Texas on January 20, 1994; however, he did not appear before a judicial officer in Oklahoma until February 9, 1994. Because the charges were pending in the Northern District of Oklahoma, his speedy trial clock did not begin to run until February 9. *United States v. Palomba*, 31 F.3d 1456, 1462 (9th Cir. 1994). A period of 131 days elapsed between initial appearance and trial (this period does not include the day of arraignment, *United States v. Vasser*, 916 F.2d 624, 626 (11th Cir.1990), *cert. denied*, 500 U.S. 907, 111 S.Ct. 1688, 114 L.Ed.2d 82 (1991)).

■ Key to our resolution of this issue is whether the filing of the superseding indictment triggered an additional excludable period from the speedy trial calculation. The government filed the superseding indictment on April 6, 1994, adding an additional conspiracy count, and expanding the existing conspiracy count by joining three codefendants and lengthening the alleged period of time. Jesus Arrendondo was the last of the four defendants to make his initial appearance on May 9, 1994. As of April 6, 1995, no more than 55 nonexcludable days had passed. In an order filed April 20, 1994, which consisted of a single sentence, the court purported to grant a § 3161(h)(8) "ends of justice" continuance to June 20, 1994; however, it based the continuance solely on the expanded scope of the superseding indictment. This court has explained that "[s]ubsection (h)(7) treats exclusions of time because codefendants are in the case, not subsection (h)(8)." *United States v. Theron*, 782 F.2d 1510, 1513 (10th Cir.1986).

On May 2, 1994, Olivo moved to dismiss the indictment and sought release from detention, arguing his time had run under the Speedy Trial Act. In its response to the motion, the government requested that the court "recognize" the continuance as a reasonable period of delay pursuant to § 3161(h)(7). By agreement of the parties, the court set bond at $100,000 on May 17, 1994. The court issued an order on June 1, 1994, in which it denied Olivo's motion to dismiss and found that "any delay occasioned by the filing of the superseding indictment and determination of the pre-trial motions filed by the co-defendant, constitutes a reasonable and unavoidable delay." We read this order as finding all time after the filing of the superseding indictment on April 6, 1994, amounted to "reasonable delay" under § 3161(h)(7).

Olivo concedes this argument turns on our interpretation and application of § 3161(h)(7). If (h)(7) applies to the period from April 6, 1994, to trial, Olivo's speedy trial argument fails. 18 U.S.C. § 3161(h)(7) provides for exclusion of "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." The instant case is within the broad language of (h)(7): The superseding indictment joined Olivo for trial with three codefendants; the court did not sever Olivo; and the time for trial as to his codefendants had not run. The question is whether the delay occasioned by the filing of the superseding indictment is "reasonable" under (h)(7). The reasonableness of a delay depends upon the relevant circumstances. *United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir.1990).

■ When examining the relevant circumstances, the first factor to consider is the "obvious purpose behind the exclusion"; that is, "to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *Theron*, 782 F.2d at 1514. "Where 'the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses,' a single trial is preferred." *Tranakos*, 911 F.2d at 1426 (quoting *United States v. Mobile Materials*, 871 F.2d 902, 916 (10th Cir.), *modified on other grounds*, 881 F.2d 866 (10th Cir.1989), *cert. denied*, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990)). Here, the superseding indictment charged all defendants with conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana. Castillo was the leader of the conspiracy. The conduct underlying the remaining counts related to a scheme intended to satisfy a drug debt owed by Castillo to Olivo.

In addition to efficiency, we also must consider whether Olivo "zealously pursued a speedy trial" and whether he was free on bond. *Id.* Olivo moved to dismiss and for release on bond. Apart from these two motions, Olivo did not significantly contribute to the delay of his trial on the superseding indictment. However, he did not move to sever. *Cf. Mobile Materials,* 871 F.2d at 917 (finding appellant's failure to move to sever significant). Olivo remained detained from January 20 through trial. On May 17, 1994, the court set his bond for release with conditions similar to those imposed upon his codefendants. Olivo simply failed to post the amount set pursuant to the "stipulation and agreement."

■ Of the factors addressed, Olivo discusses only the third, arguing primarily that the superseding indictment merely "gilded" the original indictment and it was filed only to punish him for refusing to cooperate.

In support of his first argument, Olivo relies on *United States v. Andrews,* 790 F.2d 803 (10th Cir.1986), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 505 (1987). In *Andrews,* we held that a delay between voir dire and the trial date when appellant had pled guilty was unjustified under § 3161(h)(8) and, as a result, appellant's right to a speedy trial was violated. We also held that an information which charged appellant with a single additional count, filed in open court prior to his plea, was inseparable from the superseding indictment because it merely "gilded" a count in the superseding indictment. The superseding indictment filed here is distinguishable from the information filed in *Andrews* in that it does more than merely "gild" counts previously charged. Here, the superseding indictment added an additional conspiracy count and expanded the existing conspiracy count by joining three new codefendants and lengthening the period of the conspiracy.

■ Olivo's second argument, that § 3161(h)(7) should not apply because the government filed the superseding indictment only to punish his failure to cooperate, is without factual or legal support. Olivo refers to several comments during a pretrial hearing held on March 22, 1995, to support his argument. Olivo's interpretation of the government's statements to the court is strained. Further, the authority he cites does not support his argument.

We conclude Olivo's trial was within the framework imposed by the Speedy Trial Act. The period from the filing of the superseding indictment to Arrendondo's initial appearance (April 6 to May 9) is excludable under subsection (h)(7). The court also found that the remaining days to trial (May 9 to June 20) constituted a reasonable period of delay within (h)(7). The court's finding is not clearly erroneous. Additionally, beginning May 13, Armondo Olivo, another codefendant, and Arrendondo began to file motions that were resolved by the court on June 1. Although the period from May 13 to June 1 is included within the period excludable under (h)(7), Olivo concedes this period is also excludable under (h)(1)(F) as a result of his motions to dismiss and for pretrial release filed on May 2, with the motion to dismiss denied by the court on June 1. After all excludable days are taken into account, Olivo's trial commenced 55 days after his initial appearance.

## II. *Subsequent bad act*

■ Count one of the superseding indictment alleged Olivo conspired to possess with intent to distribute 1,000 kilograms or more of marijuana. The indictment alleged the conspiracy began on or about January 1, 1987, and continued until January 1993. Olivo contends the conspiracy ended no later than April 1992. At trial, the court admitted 185 pounds of marijuana seized from Olivo's vehicle on November 9, 1993, a date subsequent to the dates charged in the superseding indictment and that argued by Olivo. Olivo argues the court erred by admitting the marijuana. We review an evidentiary decision for abuse of discretion. *United States v. Pinelli,* 890 F.2d 1461, 1482–83 (10th Cir.1989), *cert. denied,* 495 U.S. 960, 110 S.Ct. 2568, 109 L.Ed.2d 750 (1990). Accordingly, we review the court's admission of evidence under Rule 404(b) to determine whether the court abused its discretion. *United States v. Grissom,* 44 F.3d 1507, 1513

(10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1720, 131 L.Ed.2d 579 (1995).

Fed.R.Evid. 404(b) provides, in part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b) does not flatly prohibit introduction of evidence of other crimes, wrongs, or acts, but instead limits the purpose for which such evidence may be introduced. *Huddleston v. United States,* 485 U.S. 681, 687, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988). *Cf. United States v. Cuch,* 842 F.2d 1173, 1176 (10th Cir.1988) (explaining that the rule is one of inclusion unless the evidence is introduced for an impermissible purpose or undue prejudice is shown). This court has held that a defendant is presumed to be protected against undue prejudice if (1) the evidence is offered for a proper purpose, (2) the evidence is relevant, (3) the trial court makes a Rule 403 determination, and (4) the trial court, upon request, instructs the jury that the evidence is to be considered only for the proper purpose for which it was admitted. *United States v. Johnson,* 42 F.3d 1312, 1315 (10th Cir.1994) (quoting *United States v. Poole,* 929 F.2d 1476, 1481 (10th Cir.1991)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995).

The government notified the court and Olivo prior to trial of its intent to introduce 185 pounds of marijuana seized from Olivo by Texas police on November 9, 1993. The transcript submitted with the record does not contain admission of the challenged evidence. Apparently, Texas authorities, after receiving a tip from a confidential informant, arranged a meeting with Olivo and seized approximately 185 pounds of marijuana from his automobile. Some of the marijuana was in boxes in the trunk and some in a suitcase in the back seat. The marijuana was not packaged uniformly.

Olivo does not specifically direct his argument on appeal to any of the four requirements for admissibility. He argues neither that the court failed to make a Rule 403 determination nor that it failed to give a cautionary instruction. The record contains the court's final jury charge in which the jury was instructed it could not infer guilt from evidence of other unlawful conduct "of a like or similar nature" but could consider it as to "any question of intent or knowledge or lack of accident or mistake regarding the charged crimes."

"Rule 404(b) does *not* specifically exclude acts subsequent to the incident or incidents giving rise to the charges in the indictment." *United States v. Abreu,* 962 F.2d 1425, 1436 (10th Cir.1992) (citing *United States v. Hogue,* 827 F.2d 660, 663 (10th Cir.1987)), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 2405, 124 L.Ed.2d 630 (1993), *aff'd on remand,* 997 F.2d 825, 826 (10th Cir.1993).

Olivo notes that this court's cases addressing the admissibility of a subsequent bad act focus upon the similarity and proximity of the charged and subsequent acts. He argues the court abused its discretion because his subsequent misconduct was insufficiently similar and proximate to the crime charged in count one of the superseding indictment.

The subsequent misconduct involved Olivo's association with others to transport and distribute a large quantity of marijuana. His role in the subsequent offense apparently was to transport marijuana allegedly fronted him by another. The fact that the individuals involved in the two offenses packaged the marijuana somewhat differently is not dispositive. Nor is it dispositive that the subsequent conduct involved an automobile whereas the charged conduct involved a commercial vehicle. Differences in the details of subsequent and charged conduct go to whether the evidence is relevant to a particular proper purpose. When the issue is intent, subsequent evidence may be highly probative of intent. *United States v. Wyatt,* 762 F.2d 908, 910 (11th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986).

Here, the subsequent conduct was sufficiently similar to the charged conduct to make the existence of Olivo's intent to conspire to possess marijuana with intent to distribute more or less probable. Further, the two instances were not so dissimilar as to make admission of the evidence an abuse of the court's ample discretion under Rule 403.

The only potentially troubling aspect here is that Olivo engaged in the subsequent conduct more than one year after the conspiracy ended. Obviously, remoteness may decrease the probative value of extrinsic evidence. However, extrinsic evidence separated by more than a year from the charged conduct has been found probative of intent. *See United States v. Terebecki,* 692 F.2d 1345, 1349 (11th Cir.1982) (fraudulent transaction fifteen months after charged fraudulent transaction not too remote to show intent). *Cf. Cuch,* 842 F.2d at 1178 (assault committed seven and one-half years *prior* to crime charged probative and admissible to show intent). *But see United States v. Betts,* 16 F.3d 748, 757–60 (7th Cir.1994) (abuse of discretion to admit evidence of possession of large quantities of marijuana two years subsequent to charged act of conspiracy to distribute marijuana). Although it is a close question, we find that, under the facts of the instant case, the court did not abuse its discretion.

### III. *Prior bad acts*

Olivo argues the court twice erred in admitting evidence regarding prior bad acts. He challenges portions of testimony given by two witnesses: LaDonna Staehle and Wales. Olivo argues their testimony violated Rule 404(b) because it placed him in a negative light; more specifically, he argues Staehle's testimony tended to show he was the type of person who would smuggle drugs, and Wales' testimony tended to show he was the type of person who would participate in illegal monetary transactions. We review the court's admission of evidence under Rule 404(b) for abuse of discretion. *Grissom,* 44 F.3d at 1513.

 Staehle admitted early in her testimony that she previously had a drug problem and had used marijuana, cocaine, and Valium. The government developed her association with Castillo and her role in his operation. Shortly before the offending testimony, Staehle explained she and her husband spent one week in a motel waiting for Castillo to instruct them regarding an upcoming marijuana transaction. The government asked what she and her husband did that week and Staehle responded, "[w]e were staying in a

motel room and we were doing some cocaine." The government inquired about her association with Olivo. She explained that although she did not meet him in connection with Castillo's marijuana operation, she did attend a party at Olivo's house the day before she and her husband were arrested. When asked what kind of party it was, Staehle answered, "[t]hey were drinking beer. Me and my husband, we were doing some cocaine." Olivo moved for mistrial arguing that Staehle's testimony connected him to "the cocaine trade." The court denied the motion explaining, "[t]here is no basis there. She said she was the one taking cocaine."

Wales testified he was a passenger in Winkle's Corvette when it was driven to Olivo's house. He stated that he showed the Corvette to Olivo, who drove it, and the car was left at Olivo's house. He also admitted Winkle later reported the vehicle stolen and collected the insurance money. At a bench conference requested by Olivo's counsel, the court indicated the manner in which the government developed Wales' testimony "certainly left an impression with me that [Olivo] was involved [in the fraud scheme]." The government asked for an opportunity to clarify that Olivo was not involved, and the court assented and withheld decision on Olivo's motion for a mistrial. The government asked Wales: "Mr. Wales, listen to me very closely. Mr. Nuco [Arnulfo] Olivo, did he have any knowledge or information relating to the scheme involving the Corvette that you took down there?" Wales responded, "No, Nuco thought we were trying to sell the Corvette." The court then denied Olivo's motion.

 Olivo did not participate in the objectionable conduct about which Staehle and Wales testified. Even if Staehle's and Wales' conduct can be attributed to Olivo, the government argues it elicited the testimony to impeach its own witnesses. *See* Fed.R.Evid. 607 (stating that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness"). Neither the court nor the government adhered to *United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986), which re-

quires both to identify the purpose for which the evidence is offered and admitted. We consider a failure to adhere to *Kendall* harmless error if "the purpose for admitting the other acts testimony is apparent from the record, and the district court's decision to admit was correct." *United States v. Orr,* 864 F.2d 1505, 1511 (10th Cir.1988).

We find no abuse of discretion in admitting the challenged testimony. The government offered the testimony to impeach its own witnesses. Impeachment may be a permissible "other purpose" within the meaning of Rule 404(b). *United States v. Lara,* 956 F.2d 994, 997 (10th Cir.1992). The testimony was relevant to credibility and, although we agree with Olivo that the testimony may have had some spillover effect, we do not believe it was so great that the court's decision was an abuse of discretion under Rule 403. Finally, despite the court's apparent failure to instruct the jury with respect to this testimony, there is no indication in the record before us that Olivo requested either a contemporaneous cautionary instruction or a final limiting instruction. *See United States v. Record,* 873 F.2d 1363, 1376 (10th Cir.1989) (failure to instruct harmless absent a request by counsel).

## IV. *Leading questions*

Castillo was the government's primary witness. He was a key figure in the smuggling and distribution operation and he testified pursuant to a plea agreement. His testimony was confused and often contradictory, and he expressed some difficulty understanding English and statements by the court. It is unclear from the record whether he was recalcitrant or merely forgetful; however, he did state he was uncomfortable in the courtroom and hesitant to testify. The government requested that the court recognize Castillo as a hostile witness and allow leading questions, and the court agreed over Olivo's objection. Olivo argues the court erred in allowing the government to lead Castillo.

Our scope of review of a trial court's decision permitting the designation of a witness as a hostile witness and permitting leading questions is limited to whether the court abused its discretion. *See United States v.*

*Tome,* 3 F.3d 342, 352 (10th Cir.1993), *rev'd on other grounds,* — U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). We give the widest possible latitude to the trial court. *Id.* (quoting *Rodriguez v. Banco Cent. Corp.,* 990 F.2d 7, 12 (1st Cir.1993)).

The trial judge is vested with the general authority to exercise "reasonable control over the mode and order of interrogating witnesses and presenting evidence...." Fed. R.Evid. 611(a). Rule 611(c) governs leading questions; it vests broad discretion in the trial judge, *Miller v. Fairchild Industries,* 885 F.2d 498, 514 (9th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990). Rule 611(c) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony."

Situations where leading questions are allowed are: (1) where a witness is hostile, Fed.R.Evid. 611(c); (2) where a witness is reluctant or unwilling, 1 McCormick on Evidence (Practitioner Treatise Series), § 6, p. 19 (4th Ed.1992); and (3) where an adult witness has difficulty communicating, Fed.R.Evid. 611(c) advisory committee's note. The record contains ample bases for each of these exceptions: (1) The court allowed the government to lead on its implied finding that Castillo was a hostile witness; (2) Castillo indicated he was hesitant to testify and uncomfortable in the courtroom; and (3) Castillo indicated he had difficulty understanding English.

## V. *Impeachment*

Olivo argues the court improperly restricted his impeachment of Lonnie Vaughan by refusing to admit into evidence 76 pounds of marijuana seized from Vaughan's home, and by prohibiting him either to question Vaughan about his denial that criminal charges had been recently filed against Vaughan or to introduce extrinsic evidence regarding the charges. The record filed with this court does not contain all of the trial testimony. Although the record contains the testimony of Castillo, Staehle, Phillip Staehle,

and Wales, Vaughan's testimony is not included.

Appellant bears the responsibility "to order and provide all portions of the transcript necessary to give the court of appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues raised on appeal...." 10th Cir.R. 10.1.1. As we explained in *United States v. Vasquez*, 985 F.2d 491, 495 (10th Cir.1993), "[t]he failure to file a transcript ... precludes review of the trial court's evidentiary rulings." Any discussion of a claim in the absence of the appropriate portions of the transcript would be mere speculation. *See Vasquez* at 494. Therefore, "[i]n the absence of a transcript or a statement of the parties in lieu of a transcript (Fed.R.App.P. 10(c)), the Court of Appeals will not review an issue, even for plain error." *Id.* at 495.

Because we do not have the record before us to substantiate Olivo's allegations of error, we must defer to the trial court's decisions. *Id.* (quoting *Moore v. Subaru of America*, 891 F.2d 1445, 1448 (10th Cir. 1989)).

## VI. *Hearsay*

Olivo challenges Wales' testimony about statements Castillo made to Wales regarding Olivo's role in the marijuana operation and the purchase of the pickup. The court admitted the testimony under Rule 801(d)(2)(E). We review a court's findings that particular statements were made during the course of or in furtherance of a conspiracy for clear error. *United States v. Roberts*, 14 F.3d 502, 514 (10th Cir.1993), *cert. denied*, — U.S. ——, 115 S.Ct. 1417, 131 L.Ed.2d 301 (1995). We review the court's decision to admit evidence under the coconspirator exception for abuse of discretion. *United States v. Mayes*, 917 F.2d 457, 464 (10th Cir.1990), *cert. denied*, 498 U.S. 1125, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991).

At trial, Olivo argued Wales could not repeat Castillo's discussion of his marijuana operation because Wales was not a coconspirator in the "marijuana conspiracy." The basis for Olivo's objection was an implied assertion that there were two distinct conspiracies (one related to distribution of marijuana and the other to purchase of the pickup) and Wales was involved in only one (purchase of the pickup). The partial transcript submitted contains evidence that Wales participated in Castillo's drug operation. Olivo seems to have abandoned his trial objection. However, to the extent he still challenges the comments because they were not between coconspirators, his argument is unsupported by the record.

Olivo raises a different issue on appeal regarding Wales' testimony than he raised at trial. His primary argument on appeal is that the court erred because the conversation about which Wales testified occurred after both conspiracies had terminated and, therefore, could not have been "during the course and in furtherance of" any conspiracy. "We will not consider issues which are raised for the first time on appeal unless a party demonstrates an impediment which prevented raising the argument below." *United States v. Dewitt*, 946 F.2d 1497, 1499 (10th Cir. 1991), *cert. denied*, 502 U.S. 1118, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992). "Where a party has shifted his position on appeal and 'advances arguments available but not presented' to the trial court 'and where a party has had ample opportunity to make the point in the trial court in a timely manner' the issue will not be entertained on appeal." *United States v. Mitchell*, 783 F.2d 971, 976 (10th Cir.), *cert. denied*, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986). Olivo argued his objection to Wales' testimony during a lengthy bench conference. The record reveals, and he presents, no impediment which prevented him from raising the current version of his objection. He has waived the argument he now asserts.

AFFIRMED.