FILED
United States Court of Appeals
Tenth Circuit

November 16, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE GUADALUPE MULGADO-
PATIDA,

Defendant - Appellant.

No. 09-8043

(D. Wyoming)

(D.C. No. 2:08-CR-00108-WFD-5)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

Jose Mulgado-Patida (Defendant) was convicted of conspiracy to possess

and distribute methamphetamine and sentenced to 240 months' imprisonment. He

raises two issues on appeal: (1) that the district court violated the Speedy Trial

Act, 18 U.S.C. §§ 3161–74, by making inadequate findings when granting several

continuances, and (2) that the evidence at trial did not establish the single

conspiracy alleged in the indictment. We have jurisdiction under 28 U.S.C.

§ 1291 and affirm. Even if the district court's findings were inadequate to

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

support some of the continuances, there was no violation of the Speedy Trial Act because Defendant's trial was still timely. And even if there was a variance between the conspiracy charged and the conspiracy proved at trial, Defendant was not substantially prejudiced by the variance.

## DISCUSSION

### I.      The Speedy-Trial Act Claim

#### A.      Background

Defendant was detained for 672 days (about one year and 10 months) from the time he was arrested on the original conspiracy charge against him until his trial began. He was first indicted by a grand jury in the United States District Court for the District of Wyoming on May 17, 2007. The indictment charged him and eight codefendants with conspiracy to possess with intent to distribute, and to distribute, methamphetamine. The alleged conspiracy began in January 2006 and continued until the date of the indictment. Defendant was arrested in Idaho on May 29, 2007, and was arraigned in Wyoming federal court on July 18. He was held without bail.

After an August 1, 2007, search of the Westminster, Colorado, residence of Ramon Espinoza-Aguilar resulted in the seizure of about 2 pounds of methamphetamine, a superseding indictment was filed on September 20. It added Espinoza-Aguilar and five others as codefendants on the conspiracy charge and extended the conspiracy ending date to September 20, 2007. The superseding

indictment alleged that coconspirator David Morales-Martinez would receive methamphetamine from Espinoza-Aguilar in Colorado and California and would then distribute it to other coconspirators, including Defendant, who would in turn redistribute the methamphetamine to additional coconspirators for sale to others.

By May 2008 the charges against all but three of the defendants had been resolved. Several who had pleaded guilty had cooperated with the government, enabling it to widen its investigation and discover a link between the conspiracy alleged in the superseding indictment and a conspiracy charged in a separate indictment. A third indictment, which charged the enlarged conspiracy, was filed on May 15, 2008, and the superseding indictment was dismissed on the government's motion. Charged in the third indictment were Defendant and his two remaining codefendants from the superseding indictment, two defendants from the separate indictment, and nine new defendants. The alleged conspiracy began in June 2003 and continued until May 2008.

Jury trial on the third indictment was originally scheduled for July 28, 2008. But the district court granted four continuances, and trial did not commence until March 30, 2009. By that time, only four defendants remained to be tried. The court declared a mistrial on April 1. The trial of one codefendant was then severed, and the charges against another codefendant were dismissed by the government. Trial for Defendant and Espinoza-Aguilar, the sole remaining codefendant, began on April 6.

## B.     The Speedy Trial Act

When a defendant pleads not guilty, the Speedy Trial Act requires trial to begin within 70 days of the indictment filing date or the defendant's first appearance "before a judicial officer of the court in which such charge is pending," whichever occurs later.  18 U.S.C. § 3161(c)(1).  The sanction for violation of the Act is dismissal of the indictment.  *See id.* § 3162(a).

Subsection 3161(h) of the Speedy Trial Act provides exclusions that toll the running of a defendant's speedy-trial clock.  *See id.* § 3161(h).  Several are essentially automatic.  Three of these are relevant to this appeal.

First, subparagraph (h)(1)(A) excludes "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant."  *Id.* § 3161(h)(1)(A).  Excludable time under § 3161(h)(1)(A) "generally runs from the date the motion is filed seeking the examination to the date the matter is taken under advisement after receipt by the court of results and briefs and completion of any hearings."  James Cissell, Federal Criminal Trials § 12-1[c][5][i] (7th ed. 2008); *see United States v. Murphy*, 241 F.3d 447, 455–56 (6th Cir. 2001) (collecting cases).  There may be an exception within that time, however, when the defendant is transported for examination.  *See* 18 U.S.C. § 3161(h)(1)(F) (excluding "delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten

-4-

days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable"). "Time devoted to transportation for examination purposes is more properly excluded under [§ 3161(h)(1)(F)]," and "[a]ny transportation time in excess of 10 days from the order causing the transportation is presumed to be unreasonable under the [Speedy Trial Act]." Cissell, *supra,* at § 12-1[c][5][i]; *see also United States v. Noone*, 913 F.2d 20, 25 n.5 (1st Cir. 1990) (holding that any other reading would render § 3161(h)(1)(F) "mere surplusage"); Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, *Guidelines to the Administration of the Speedy Trial Act of 1974, As Amended*, 106 F.R.D. 271, 286 (1984) ("Unreasonable delay in transporting a defendant to or from an institution at which the examination takes place may serve to reduce the amount of excludable time.").

Second, subparagraph (h)(1)(D) excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). And third, subparagraph (h)(1)(H) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *Id.* § 3161(h)(1)(H).

In addition, a district court can continue the case and exclude the resulting delay from counting under the Speedy Trial Act. *See id* § 3161(h)(7).

Paragraph (h)(7) excludes the period of the continuance if the court finds, on the record, that the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial. *See id.*

Of special importance in this case, delays that stop the speedy-trial clock for one defendant typically stop the clock for codefendants as well. Paragraph (h)(6) excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted," *id.* § 3161(h)(6); *see United States v. Vogl*, 374 F.3d 976, 983 (10th Cir. 2004) ("an exclusion for delay attributable to one defendant is applicable to all co-defendants" (internal quotation marks omitted)).[1] "The obvious purpose behind the exclusion in § 3161(h)(7) is to accommodate the efficient use of prosecutorial and judicial resources by trying multiple defendants in a single trial." *Vogl*, 374 F.3d at 983 (brackets and internal quotation marks omitted). Although the filing of a superseding indictment generally "does not serve to toll the speedy trial clock," *United States v. Apperson,* 441 F.3d 1162, 1181 (10th Cir. 2006), the period from the filing of a superseding indictment joining new codefendants until the initial appearance of the last new codefendant under that indictment does trigger a paragraph (h)(6) exclusion. *See United States*

---

[1]Under paragraph (h)(6) the period of delay must be "reasonable." In measuring reasonableness we consider whether the defendant was incarcerated, whether he actively sought an earlier trial date, and whether it is most efficient to try the defendant and codefendant together. *See United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990).

*v. Olivo*, 69 F.3d 1057, 1062 (10th Cir. 1995); *see also Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant.").

## C. Application to Defendant

On appeal Defendant's sole argument under the Speedy Trial Act is that the district court granted several ends-of-justice continuances under § 3161(h)(7) without making sufficient oral or written findings on why the continuances should be granted. We review for an abuse of discretion the district court's denial of a motion to dismiss for violation of the Act. *See Vogl*, 374 F.3d at 982. We review de novo its compliance with the legal requirements of the Act, *see id.*, and we accept its factual findings unless they are clearly erroneous, *see id.*

In this case, Defendant's argument on appeal is beside the point. Even if he is correct that none of the ends-of-justice continuances were proper, he has not challenged the government's contentions in its answer brief on appeal that his trial complied with the Speedy Trial Act because of tolling provisions other than paragraph (h)(7). We could affirm solely on the basis of Defendant's failure to challenge the government's alternative ground for affirmance. *See Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996). But we briefly examine the government's arguments to assure ourselves that they are essentially correct.[2]

---

[2]In this brief examination we do not dwell on whether the excluded periods for codefendants were "reasonable" under § 3161(h)(6). Arguing against

(continued...)

Defendant's speedy-trial clock began to run on July 18, 2007, when he was arraigned in the Wyoming district court. *See* 18 U.S.C. § 3161(c)(1) (requiring trial to begin within 70 days of the indictment filing date or the defendant's first appearance before a judicial officer of the court in which such charge is pending, whichever occurs later). From that date on, a series of overlapping exclusions covered almost the entire period until his initial trial (which ended in a mistrial).

Motions filed by codefendants resulted in exclusions from the date of his arraignment until August 23, 2007. Codefendant Tracy Glidewell filed a motion to suppress on July 2, 2007 (before Defendant's arraignment), and the district court scheduled a hearing on that motion and "all other pending motions" for July 24, 2007. *See id* § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on . . . such motion"); *id.* § 3161(h)(6) (excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"); *Vogl*, 374 F.3d at 983 ("[a]n exclusion for delay attributable to one defendant is applicable to all co-defendants" (internal quotation marks omitted)). At the

_____

[2](...continued)
reasonableness is that Defendant was incarcerated. But the efficiency of trying alleged coconspirators together generally justifies the application of that provision; and Defendant did not object to any continuance until codefendant Vigil's motion to postpone the trial setting for November 3, 2007, five months before the eventual trial.

hearing the district court took two other motions under advisement, extending the exclusion an additional 30 days to August 23. *See* 18 U.S.C. § 3161(h)(1)(H) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court"). Motions filed after the July 24 hearing probably further tolled Defendant's speedy-trial clock, but we will assume for convenience that the clock ran from August 23 until the superseding indictment was filed on September 20, 2007, a period of 28 days.

The next excluded period ran from September 20, 2007, until February 27, 2008, when Joshua Weichselberger, a new codefendant under the September 20 indictment, was arraigned. *See id* § 3161(h)(6)*; Olivo*, 69 F.3d at 1062 (filing of superseding indictment joining new codefendants triggers a paragraph (h)(6) exclusion from the filing date of the superseding indictment until the initial appearance of the last new codefendant under that indictment). Overlapping that excluded period was the period from January 31, 2008, when Espinoza-Aguilar filed a motion to suppress, until the district court completed the hearing on that motion on April 15, 2008. *See* 18 U.S.C. §§ 3161(h)(1)(D), (h)(6). The court took the motion under advisement, which tolled the Defendant's speedy-trial clock for 30 additional days, *see id.* § 3161(h)(1)(H), until May 15, 2008.

Defendant's clock was then tolled from the filing of the third indictment on May 15, 2008, until the last codefendant under that indictment, Derrick Daniel

Abbott, was arraigned on September 9, 2008. *See Olivo*, 69 F.3d at 1062. That excluded period overlaps the period from July 7, 2008, when codefendant Brian Nazareno filed a motion for a mental evaluation, to October 24, 2008, when Nazareno was evaluated in Wyoming. *See* 18 U.S.C. § 3161(h)(1)(A) (excluding "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant"); *id.* § 3161(h)(6). (Nazareno pleaded guilty on December 19, 2008. The excluded period probably extended past the evaluation date, but all time after October 15 was excluded anyway, as explained in the next paragraph.)

The period from October 15, 2008, until trial began on March 30, 2009, is excluded because of a motion filed by codefendant Christopher Vigil. Among other things, the motion sought a *James* hearing to determine whether statements by alleged coconspirators that would otherwise be hearsay would be admissible under the coconspirator exception. *See United States v. James*, 590 F.2d 575 (5th Cir. 1979); Fed. R. Evid. 801(d)(2)(E) (coconspirator exception). A motion that "requires a hearing" tolls the speedy-trial clock from the filing of the motion until the conclusion of the hearing. *Henderson*, 476 U.S. at 329. A motion to determine the applicability of the coconspirator exception is such a motion. We have said that "a district court can only admit coconspirator statements if it holds a *James* hearing or conditions admission on forthcoming proof of a predicate conspiracy through trial testimony or other evidence" and have expressed a

"strong preference for *James* proceedings." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (citation and internal quotation marks omitted). Other circuits have decided that motions for *James* hearings are motions "necessitating hearings," and "[a]s such, the entire time from the filing of the motion to the conclusion of the hearing is excludable, even when the hearing is deferred until trial." *United States v. Phillips*, 936 F.2d 1252, 1254 (11th Cir. 1991); *see United States v. Grosz*, 76 F.3d 1318, 1324 n.3 (5th Cir. 1996) ("pending *James* motions do toll the speedy trial clock when they are heard and ruled upon at trial"). Although the district court never set Vigil's motion for hearing, it explained its intention to make *James* determinations during the trial itself. Accordingly, the period from the filing of Vigil's motion until the start of trial on March 30, 2009, is excluded under § 3161(h)(1)(D).[3]

Thus, even assuming that none of the ends-of-justice continuances were properly granted, Defendant's speedy-trial clock ran at most 28 days (between August 23 and September 20, 2007), comfortably within the 70 days allowed. There were then five days from the declaration of the mistrial on April 1 until the first day of trial on April 6, but the declaration restarted a 70-day clock. *See* 18

---

[3]The district court issued an order on March 27, 2009, denying Vigil's discovery motions as moot. The order listed the docket numbers for the affected motions, and one of those listed was the motion that included, in addition to discovery motions, Vigil's request for a *James* hearing. The court obviously was not including the *James*-hearing request in the order because it announced early during trial that it intended to resolve the *James* issues during trial.

U.S.C. § 3161(e) ("[T]he trial shall commence within seventy days from the date the action occasioning the retrial becomes final.").

There was no violation of the Speedy Trial Act.

## II.    Variance

Defendant argues that there was a variance between the single conspiracy charged in the indictment and the alleged multiple, smaller conspiracies proved at trial. When a defendant seeks reversal because of an alleged variance, we examine (1) whether the evidence presented supports the overall conspiracy charged or if a variance occurred, and (2) if there was a variance, whether the variance was substantially prejudicial to the defendant. *See United States v. Carnagie*, 533 F.3d 1231, 1237 (10th Cir. 2008). If a variance is found, we review the question of prejudice de novo. *See id.* at 1240.

In this case we need not address the first issue because we conclude that even if there was a variance, Defendant did not suffer substantial prejudice as a result. Defendant argues that he suffered prejudice because the physical evidence introduced during trial, much of it seized after he claims to have severed connections with the alleged coconspirators, implicated only Espinoza-Aguilar and "cast the danger of the inference of guilt" against Defendant. Aplt Br. at 40. He asserts that the "bulk of the evidence was so overwhelming that it overshadowed any attempt to demonstrate his innocence" and that it was impossible to discern his true conduct or relevant conduct attributable to him. *Id.*

-12-

at 41. He claims that he was additionally prejudiced by being incarcerated for more than 22 months while the government continued to investigate, gather evidence, and indict more people in the conspiracy.

Defendant has failed to show, however, that he was prejudiced by the introduction of evidence at trial (whether this evidence was acquired by the government before or after his incarceration) that did not relate specifically to him. A variance is substantially prejudicial "if the evidence adduced against co-conspirators involved in separate conspiracies was more likely than not imputed to the defendant by the jury in its determination of the defendant's guilt." *Carnegie*, 533 F.3d at 1241 (internal quotation marks omitted). But in Defendant's trial the evidence implicating only Espinoza-Aguilar was "not so intricate as to render the jury unable to segregate the evidence associated with each defendant's individual actions." *Id.* at 1242 (internal quotation marks omitted).

To be sure, the government presented evidence of a far-ranging conspiracy that went well beyond Defendant's activities. The conspiracy involved a drug-dealing organization run by Espinoza-Aguilar that operated in Wyoming, California, Colorado, and Iowa. This conspiracy included several mid- and low-level dealers and distributors. One such mid-level dealer was Morales-Martinez, who sold drugs for Espinoza-Aguilar in Wyoming and brought several others into

the conspiracy. Thus Defendant, whose involvement was through Morales-Martinez, was a comparatively minor actor.

But the evidence against Defendant was not vague allegations of mere association with the culprits. Although witnesses described Defendant as a "sidekick" of Morales-Martinez, they also described his specific criminal conduct. Several testified that Defendant cut the methamphetamine with another chemical to increase the weight of the substance, weighed methamphetamine and packaged it for distribution, and distributed methamphetamine to users and other dealers. There was further testimony that Defendant would accompany Morales-Martinez on trips to California to pick up methamphetamine.

Given that there was only one codefendant at Defendant's trial and that the evidence against Defendant was compartmentalized, there was no risk of jury confusion. *See id.* at 1242 (concluding that the risk of prejudice was not great in a trial involving three codefendants). Even if a variance occurred, Defendant has not shown that he suffered substantial prejudice as a result.

## CONCLUSION

We AFFIRM the district court's denial of Mr. Mulgado-Patida's motion to dismiss for violation of the Speedy Trial Act and AFFIRM his conviction.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge