**UNITED STATES of America, Appellee,**

v.

**Raul RIVERA RAMOS, a/k/a Raulito, Defendant, Appellant.**

**No. 88–1090.**

United States Court of Appeals, First Circuit.

Argued July 29, 1988.

Decided Sept. 12, 1988.

---

Eduardo Caballero Reyes, Hato Rey, P.R., by Appointment of the Court, for defendant, appellant.

Jorge E. Vega–Pacheco, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Defendant-appellant Raul Rivera Ramos appeals from the district court's denial of his Fed.R.Crim.P. 35(a) motion to correct his sentence.[1] Defendant argues that the three-count indictment to which he pled guilty charged only one offense, and consequently, the maximum sentences imposed consecutively for each count are illegal. The district court rejected this argument. We agree with the district court and affirm.

Appellant's guilty plea arose from an incident on the night of April 29, 1986, when defendant and several others, carrying firearms, entered the house of James Rumchak in Puerto Rico, while Rumchak, Rumchak's wife, Arturo Vela, and R. David Mahon were watching television. Rumchak, Vela and Mahon were FBI agents, although defendant and the other intruders did not know this initially. The intruders ordered, at gunpoint, the various occupants of the house to lie on the floor. The defendant and the other intruders then proceeded to ransack the house. During this time the three FBI agents and Rumchak's wife were repeatedly threatened; one of the agents was kicked several times. At some point, the defendant and his cohorts discovered that three of their four victims were FBI agents. This led to further threats at gunpoint against each of the three agents in an effort to locate the agents' weapons. The defendant and the other intruders left the house nearly an hour after entering it, taking with them various weapons and valuables they had found in the house.

Defendant and three others were arrested and indicted for these events. Defendant subsequently pled guilty to counts four, five and six of the seven-count indictment. Each of the three counts charged defendant with violating 18 U.S.C. § 111 (1969) and 18 U.S.C. § 1114 (1984). Count four, the first of the three counts to which defendant pled guilty, reads as follows:

> On or about April 29, 1986, ... Raul Rivera Ramos ... [and his co-defendants], aiding and abetting each other, did, knowingly, willfully, unlawfully and without just cause or excuse, using dangerous weapons, that is, two revolvers, forcibly assault, oppose, intimidate and interfere with *Arturo P. Vela*, on account of the performance of his duties as Special Agent of the Federal Bureau of Investigation, all in violation of Title 18, United States Code, Sections 111 and 1114.

(Emphasis added.) The other two counts to which the defendant pled guilty are identical except for the identity of the assaulted FBI agent: count five named James Rumchak as the agent assaulted, while count six

---

1. All references to the Federal Rules of Criminal Procedure are to the unamended rules applicable to offenses committed prior to November 1, 1987.

named R. David Mahon.[2] The district judge sentenced the defendant to ten years imprisonment on each of the three counts, to be served consecutively. This was the most severe sentence possible.

Moving under Fed.R.Crim.P. 35, the defendant asked the district court to reduce his sentence by allowing him to serve the three ten-year terms concurrently rather than consecutively.[3] The district court denied this motion. Defendant appeals from this denial, arguing, as he did in the court below, that the three counts were multiplicitous in that they all charged the same offense. The defendant contends that he engaged in only *one act* of assault in violation of 18 U.S.C. § 111. Although three federal agents were affected by this one act, he argues that it is the number of acts rather than the number of victims which forms the unit of prosecution for this particular offense. Thus, according to the defendant, the consecutive sentences imposed on these three counts violated his Fifth Amendment right not to be twice placed in jeopardy, and, because of this, the sentences are illegal and must be reduced.[4]

Section 111 reads:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties shall be fined not more than $5000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Section 1114 includes FBI agents and thus brings them within the protection of section 111. 18 U.S.C. § 1114 (1984).

■ The defendant is correct in asserting that the appropriate unit or units of prosecution under 18 U.S.C. § 111 must be determined by the number of distinguishable *acts* of assault rather than the number of federal officers assaulted. In *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), the petitioner, Ladner, had fired a shotgun into a car containing two federal officers. He was convicted of two violations of the statutory predecessor to section 111, and he was sentenced to the maximum punishment of ten years imprisonment on each conviction, the two sentences to run consecutively. After serving his first ten-year prison term, Ladner moved the district court under 28 U.S.C. § 2255 (1971) to correct the second, consecutive sentence. According to Ladner, he had fired only one shotgun blast into the car and it was the pellets from this single discharge that had wounded both officers. Ladner argued that under these circumstances he was guilty of but one assault and subject to only one punishment. Finding the legislative intent behind section 111 to be ambiguous and applying the rule of

---

**2.** We use the term "assault" here and throughout this opinion as a shorthand to encompass all the alleged actions under 18 U.S.C. § 111.

**3.** Because the defendant is challenging the legality of his sentence, his request is specifically a Rule 35(a) motion. The applicable Rule 35(a) reads as follows: *"(a) Correction of Sentence.* The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." Such a motion to correct the sentence would be appropriate where, as defendant argues here, the act involved in several counts of the indictment is the same and consecutive sentences are improperly pronounced under each of the several counts. *Heflin v. United States,* 358 U.S. 415, 418, 79 S.Ct. 451, 453, 3 L.Ed.2d 407 (1959); C. Wright, 3 *Federal Practice & Procedure* § 582, at 383

(1982). The defendant did not move under Rule 35(b) for a reduction in sentence because of changed circumstances requiring leniency.

**4.** This appeal is limited to the narrow question of whether the sentence is illegal because the three counts in the indictment were multiplicitous. At several points in his brief, defendant argues that he was not aware of the agents' identity until *after* he had assaulted them. While defendant does not make his argument clear, this seems to suggest the absence of an essential element of the crime—that defendant assaulted the agents *because* they were federal officials. But by pleading guilty, defendant conceded this element as being established. *Kerrigan v. United States,* 644 F.2d 47, 49 (1st Cir. 1981). He is thus foreclosed from raising this issue here in his attack upon the legality of his sentence.

lenity, the Supreme Court agreed with Ladner, holding that a single discharge of a shotgun would constitute only one violation of section 111 no matter how many federal officers were affected.[5] *Ladner,* 358 U.S. at 178, 79 S.Ct. at 214. *See United States v. Hodges,* 436 F.2d 676, 678 (10th Cir.), *cert. denied,* 403 U.S. 908, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971). Given the Court's interpretation of section 111, the question in evaluating defendant's claim of multiplicity is "whether there is more than one act causing injury, not whether more than one officer is injured by the same act." *United States v. Wesley,* 798 F.2d 1155, 1156–57 (8th Cir.1986). *See also United States v. Theriault,* 531 F.2d 281, 285 (5th Cir.), *cert. denied,* 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed. 2d 182 (1976).

■ This Circuit has ruled that a defendant who pleads guilty may not later contest the factual and theoretical foundations of the indictment to which he has pled.[6] *Kerrigan v. United States,* 644 F.2d 47, 49 (1st Cir.1981) (indictments sufficiently described two separate and distinct conspiracies for which defendant could constitutionally be sentenced to two separate terms of imprisonment). Given this, we might decide for the government on the face of the indictment if the indictment had clearly alleged that the defendant engaged in three separate acts of assault rather than simply one act of assault that affected three federal officers. However, the only indication from the face of the indictment that more than one act was involved is that each of the three counts named a separate victim. While this suggests that more than a single act was involved, we cannot say that it rules out all possibility that such was not the case. We think it necessary, therefore, to look behind the indictment and to determine from the information placed before the court when the plea was accepted, and, later, when sentence was pronounced, whether three separate acts rather than one only was committed.

■ We are satisfied from our review of the record that such was the case—that defendant assaulted each of the three agents separately at different times, and not just all three together. Thus, since defendant violated section 111 by committing three separate acts (or clusters of acts), the three counts of the indictment to which defendant pled guilty were not multiplicitous and the sentence imposed was not illegal.

At the Rule 11 hearing in which the defendant entered his guilty plea, the government, in providing a factual basis for the plea by reciting the evidence it would have presented at trial, stated,

> During this period, it was determined that the agents were identified as agents of the Federal Bureau of Investigation. And at that time *each* of the three agents were at gunpoint, threatened, in order to find shotguns which were believed to be in the house, and also a nine

---

5. The Court remanded the case to the district court to determine whether Ladner had in fact fired only one shotgun blast as he alleged. In doing so, the Court intimated that *two* shotgun blasts would constitute two violations of section 111: "In view of the trial judge's recollection that 'more than one shot was fired into the car in which the officers were riding . . .' we cannot say that it is impossible that petitioner was properly convicted of more than one offense, even under the principles which govern here." *Ladner,* 358 U.S. at 178 n. 6, 79 S.Ct. at 214 n. 6.

6. While a defendant may not repudiate the allegations of an indictment to which he has pled guilty, a plea of guilty does not in itself constitute a waiver of a defendant's rights under the double jeopardy clause. *See Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975); *Kerrigan,* 644 F.2d at 49.

The Supreme Court has this year granted certiorari in a case that raises the issue of whether a defendant who pleads guilty to indictments alleging two different criminal conspiracies is entitled to a factual determination of his contention, raised for the first time in a subsequent collateral attack on his sentences, that the two conspiracies alleged were actually a single conspiracy. *United States v. Broce,* — U.S. —, 108 S.Ct. 1073, 99 L.Ed.2d 232 (1988). The case under review is an unpublished decision of the Tenth Circuit ruling that its previous opinion in *United States v. Broce,* 781 F.2d 792 (10th Cir. 1986) (en banc) (guilty plea does not in itself waive double-jeopardy protection), was unaffected by *Ricketts v. Adamson,* — U.S. —, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (*defendant's* breach of plea agreement removed double jeopardy bar to prosecution on greater charge).

milimeter [sic] weapon which the defendants thought was in the house.

Tr. of Change of Plea Hearing at 11 (emphasis added). At the conclusion of this statement, the defendant informed the district court that he agreed with the government's version of the crime.

The government's assertion indicates, if tersely, that three assaults took place: *each* of the three agents was threatened at gunpoint, not all three together. This version is buttressed by evidence that the defendants were in the house and in the victims' presence for an extensive period of time—nearly an hour—during which there was ample time for defendants to concentrate on each of the victims individually. More significant corroboration appears in the presentence report and accompanying victim's statement to which the district court referred extensively at the sentencing hearing, and which this court has since read. It is manifest from these that the government's case against the defendant included evidence that the threats at gunpoint were not just delivered to all three agents collectively at once but were made to different agents at different moments, with special emphasis and individualized words, and by pointing the pistol close to the head of each, at different times. There was evidence, for example, that agent Vela was kicked on several occasions and that agent Mahon, when being questioned about where he kept his own weapons, had a cocked revolver placed against the back of his head. There was thus a factual predicate for finding that each of the three agents was separately assaulted. We conclude that defendant engaged in three separate assaultive acts, each violating section 111 independently. *See Ladner*, 358 U.S. at 178 n. 6, 79 S.Ct. at 214 n. 6 (quoted *supra*, note 5); *Wesley*, 798 F.2d at 1157 (defendant engaged in two separate acts of assault when he struck one guard and moments later struck another guard); *Hodges*, 436 F.2d at 678 (defendant gave each of five officers individual attention, forcibly assaulting each in succession, thus violating section 111 five times).

■ The district court could properly rely when sentencing the defendant upon the information contained in the presentence report as well as that received earlier when the plea was taken. Both defendant and his counsel stated at the sentencing that they had had an opportunity to read the report, and defense counsel said that he had no objection to it. A presentence report must include "a statement of the circumstances of the commission of the offense...." Fed.R.Crim.P. 32 (c)(2)(B). Under the circumstances, we are likewise content to accept this portrayal of the events in question. *See Hardy v. United States*, 691 F.2d 39, 40–41 (1st Cir.1982); C. Wright, 3 *Federal Practice & Procedure* § 524, at 78 (1982).

Given the evidence indicating that the defendant and his associate had engaged in separate acts of assault on each of the three FBI agents, the three counts charging defendant with violating section 111 are not multiplicitous, and the maximum sentences imposed on each of these counts, to be served consecutively, are not illegal. The decision of the district court denying defendant's Fed.R.Crim.P. 35(a) motion is affirmed.

SO ORDERED.