**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

KEITH R. SEGIEN,

       Defendant-Appellant.

No. 96-3355

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 95-CR-30004)**

---

Submitted on the briefs.[*]

Jackie N. Williams, United States Attorney, and T.G. Luedke, Assistant United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

David J. Phillips, Federal Public Defender, and Marilyn M. Trubey, Assistant Federal Public Defender, Topeka, Kansas, for Defendant-Appellant.

---

Before **ANDERSON, TACHA** and **BRORBY**, Circuit Judges.

---

   [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

**BRORBY**, Circuit Judge.

Mr. Keith R. Segien was convicted of two counts of violating 18 U.S.C. § 111 (1994), which prohibits, *inter alia*, assaulting, resisting, or impeding certain federal officers or employees. He makes a number of arguments on appeal regarding his convictions and the sentence imposed by the district court. We affirm.

On March 10, 1995, Ms. Kristy Rodgers, a Corrections Officer at the Leavenworth, Kansas, United States Penitentiary, was on duty at the B cell house metal detector, where she monitored inmates entering the cell house. At approximately 11:30 a.m., Mr. Segien, wearing what Officer Rodgers thought to be a UNICOR (prison industries) work uniform, sought entry to the cell house. Because UNICOR workers were not allowed into the cell house at that time of day, Officer Rodgers stopped and questioned Mr. Segien. Mr. Segien rapidly became verbally abusive and belligerent.

Officer Rodgers directed Mr. Segien to Center Hall, where their dispute continued, attracting the attention of Case Manager Russ Purdue. Mr. Purdue approached and attempted to calm Mr. Segien. However, Mr. Segien continued to

respond with hostile language. Mr. Purdue then informed Mr. Segien he was going to take him to the "Lieutenant's" office, and Officer Rodgers ordered him to turn around to be handcuffed. The situation further escalated, and Mr. Segien began swinging his fists, hitting Mr. Purdue in the shoulder. Officer Rodgers and Mr. Purdue attempted to control Mr. Segien physically, and the three fell to the floor. During the struggle Mr. Segien grabbed Mr. Purdue's genitals and his weight landed upon one of Mr. Purdue's knees, injuring it. Other officers entered the fray and assisted in restraining Mr. Segien.

Prison officers, including Mr. Purdue, then escorted Mr. Segien to the Lieutenant's office, approximately fifty yards from the scene of the altercation. While waiting to enter the office and under the officers' control, Mr. Segien spat on Mr. Purdue and threatened to kill him. In response to further struggles by Mr. Segien, the officers placed him in leg irons and transferred him to the special housing unit, a disciplinary holding facility, where he was placed in segregation.[1]

---

[1] Mr. Segien's testimony deviates somewhat from that of the prison officers. He claimed Mr. Purdue initiated the physical confrontation by tackling him from behind, denied grabbing Mr. Purdue's genitals, and asserted any spit on Mr. Purdue was unintentional and merely incidental to his yelling at Mr. Purdue. He generally paints the course of events in a light more favorable to himself.

Apparently Mr. Segien remained perturbed. At approximately 2:00 p.m., about two hours after the earlier incidents, he ripped off the sprinkler head in his cell, causing water to pour in. He then refused to obey officers' orders, necessitating they "go in and get him." During their doing so, Mr. Segien suffered a contusion on his left ear, which resulted in some hearing loss.

As Mr. Purdue left the Lieutenant's office, his knee gave out and he collapsed. Unable to walk, he was taken to a local hospital. Mr. Purdue, a former marine, testified he suffered intense pain from the injury to his knee. A doctor recommended arthroscopic surgery, but ultimately Mr. Purdue decided upon a treatment of physical therapy. The doctor told Mr. Purdue not to put any weight on his knee for two weeks, during which time he moved around through the use of crutches. His knee was immobilized in a soft cast for a time, and then he underwent approximately two months of physical therapy. He was off work for just over two weeks.

Mr. Segien was indicted on three counts of violating 18 U.S.C. § 111(a)(1), by refusing to submit to restraints and swinging his fists in the direction of Officer Rodgers (Count I), by refusing to submit to restraints and grabbing Mr. Purdue by the testicles (Count II), and by spitting on Mr. Purdue and saying "I'll

kill you" (Count III). A jury found Mr. Segien not guilty of Count I, but guilty of Counts II and III. The district court sentenced Mr. Segien to 105 months imprisonment on Count II, and 36 months imprisonment on Count III, running concurrently with the sentence imposed for Count II. The court also ordered Mr. Segien to serve three years supervised release for Count II upon his release from imprisonment, and, running concurrently, one year supervised release for Count III. Additionally, the court ordered Mr. Segien to pay a $50 special assessment on each of Counts II and III.

Mr. Segien raises six issues on appeal: (1) the district court erred in applying the ten-year statutory maximum set forth in § 111(b) rather than the three-year maximum term of incarceration of § 111(a); (2) the district court erred in applying United States Sentencing Guideline § 2A2.2 instead of § 2A2.4; (3) the district court sentenced him in excess of the sentencing guideline range on Count III; (4) Count III was multiplicious of Count II; (5) the district court made erroneous Fed. R. Evid. R. 404(b) evidentiary rulings; and (6) the district court erred in not departing downward when sentencing him. We address these issues in the order presented.

Mr. Segien first challenges the district court's use of 18 U.S.C. § 111(b) to

sentence him to more than three years imprisonment on Count II. 18 U.S.C. § 111 provides:

> **Assaulting, resisting, or impeding certain officers or employees**
>
> **(a) In general.**--Whoever--
>
>> **(1)** forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;[2] or
>>
>> **(2)** forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.
>
> **(b) Enhanced penalty.**--Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon ... or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

The district court premised the 105-month sentence for Count II upon its finding, arrived at during sentencing, that Mr. Segien had caused "bodily injury" to Mr. Purdue, rendering the ten-year statutory maximum set forth in § 111(b) applicable.

---

[2] Mr. Segien does not argue Mr. Purdue does not fall within this category.

Mr. Segien asserts § 111(b) creates a separate offense from that set forth in § 111(a), one which contains an additional element (use of a deadly weapon or bodily injury) that the prosecution must prove beyond a reasonable doubt. Because the issue of bodily injury was not presented to the jury, he claims the judge could sentence him to no more than the three-year maximum period of imprisonment stated in § 111(a).

We note "the Due Process Clause protects [criminal defendants] against *conviction* except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970) (emphasis added). However, facts impacting the severity of a *sentence* need not be proven beyond a reasonable doubt, though some constitutional limitations still adhere. *Patterson v. New York*, 432 U.S. 197, 210, 214 & n.15 (1977); *see also id.* at 207 (State need not "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment"). Thus, the question at hand is whether "bodily injury" is an element of the crime, which must be proven beyond a reasonable doubt, or whether it is simply a sentence enhancement.

-7-

We are guided by the Supreme Court case of *McMillan v. Pennsylvania*, 477 U.S. 79 (1986). In *McMillan*, the Court examined the constitutionality of a provision of Pennsylvania's Mandatory Minimum Sentencing Act mandating judges sentence anyone convicted of certain enumerated felonies to no less that five years imprisonment if the judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense. *Id.* at 80-82. The defendant appellants contended visible possession of a firearm was an element of the offenses for which they were being sentenced and therefore must be proven beyond a reasonable doubt. *Id.* at 83-84. The Court, rebuffing the appellants' contention, noted the legislature's definition of the elements of the offense is usually dispositive in distinguishing between essential elements of an offense and mere sentencing factors. *Id.* at 85.

In the present case, Congress clearly intends subsection (b) to be a sentencing enhancement provision. First and foremost, when Congress separated § 111 into two subsections, it also explicitly titled the latter subsection "Enhanced penalty" in bold print. Pub. L. No. 100-690, 102 Stat. 4386. The first step in statutory interpretation is examination of the statutory language, *see Moskal v. United States*, 498 U.S. 103, 108 (1990); *Central Trust Co. v. Official Creditor's Comm. of Geiger Enters., Inc.*, 454 U.S. 354, 359-60 (1982) (per curiam), and a

more manifest statement of Congress' intent that subsection (b) operate as a sentencing enhancement provision rather than a separate offense is difficult to imagine. Furthermore, the structure of § 111 implies such a reading: subsection (b) is not self-standing; rather, it references commission of the elements set forth in subsection (a) as the necessary predicate offense. It simply serves to increase the penalty imposed on certain individuals who commit the offense prohibited by § 111(a) in a fashion Congress has determined warrants additional sanction. This understanding of the statute comports with that of the Ninth Circuit, the only other circuit to analyze and distinguish § 111's elements and sentencing enhancements, s*ee United States v. Young*, 936 F.2d 1050, 1054 (9th Cir. 1991) (holding § 111(b)'s reference to use of a deadly or dangerous weapon to be a sentencing factor, rather than an element of the offense), and our recent interpretation of a similarly structured statute*, see United States v. Valdez*, 103 F.3d 95, 96-98 (10th Cir. 1996) (analyzing 8 U.S.C. § 1326(a) and (b) (1994) and finding the latter subsection to be a sentencing enhancement provision rather than a separate offense).

However, though we find Congress' intent to be self-evident, *McMillan* informs us we must nonetheless consider whether so applying the statute would be constitutional. *See* 477 U.S. at 86 (stating the Constitution requires "in certain

limited circumstances ... facts not formally identified as elements of the offense charged" be treated as such and proven beyond a reasonable doubt). The *McMillan* Court declined to precisely delineate this constitutional demarcation, *see id.* at 86, instead simply examining several factors. In finding the Pennsylvania act constitutional, the Court noted: the statute did not create any impermissible presumptions nor relieve the prosecution of its burden of proving guilt, *id.* at 87; it "neither alter[ed] the maximum penalty for the crime committed nor create[d] a separate offense calling for a separate penalty," *id.* at 87-88; and there was no indication the legislature structured the act to evade the "reasonable doubt" requirement, *id.* at 89-90.

We find no alarms raised when examining § 111(b) in light of the first and third factors. It creates no presumptions whatsoever, and is inapplicable unless the prosecution proves, beyond a reasonable doubt, a defendant's guilt of the offense pronounced in § 111(a). Nothing implies Congress drafted § 111 to improperly avoid the prosecution's reasonable doubt burden.

Mr. Segien makes much, however, of the *McMillan* Court's discussion of the second examined factor. There the Court noted the Pennsylvania act did not authorize sentences exceeding those allowable for the underlying offense; it

-10-

simply provided for a mandatory term of imprisonment within the maximum already established. 477 U.S. at 82, 87-88. Accordingly, the Court had no fear the sentence enhancer was "a tail which wags the dog of the substantive offense," but did state that "if a finding of visible possession exposed [defendants] to greater or additional punishment" their claim visible possession was an element of the punished offense, necessitating proof beyond a reasonable doubt, "would have at least more superficial appeal." *Id.* at 87-88. Relying on this discussion, Mr. Segien asserts that because, upon a finding of bodily injury, subsection (b) provides for a more than threefold increase in the possible period of imprisonment, such an injury is an offense element that must be proven beyond a reasonable doubt.

However, though we have "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir. 1993), *cert. denied*, 511 U.S. 1020 (1994), due process does not mandate proof of "bodily injury" beyond a reasonable doubt simply because such a finding leads to a seven year increase in the statutory maximum term of imprisonment for violation of § 111. Indeed, the *McMillan* Court, expressly failing to draw a constitutional "bright line," stated only that such a situation would provide

*superficial* appeal to an argument the enhancing fact should be treated as an element. 477 U.S. at 87-88, 91 (emphasis added). Notably, none of the other concerns considered in *McMillan* are present in the instant case. Moreover, this circuit and others have held other statutory provisions that far more increase a potential term of imprisonment upon the presence of particular facts, including the existence of bodily injury, to be sentencing enhancements rather than additional offense elements. For example, in *United States v. Gregg*, 803 F.2d 568, 569-70 (10th Cir. 1986) (reaffirmed by *United States v. Phelps*, 17 F.3d 1334, 1338 (10th Cir.), *cert. denied*, 513 U.S. 844 (1994)), *cert. denied*, 480 U.S. 920 (1987), we examined then § 1202(a) of the Armed Career Criminal Act of 1984,[3] which, upon a finding a defendant had three prior convictions for robbery or burglary, increased the sentence for being a felon in possession of a firearm from a maximum of two years imprisonment to a minimum prison term of fifteen years. We nonetheless held § 1202(a) was merely a sentencing enhancement statute, rather than a new substantive offense. *Id.*; *accord*, *e.g.*, *United States v. McGatha*, 891 F.2d 1520, 1527 (11th Cir.), *cert. denied*, 495 U.S. 938 (1990); *United States v. Rumney*, 867 F.2d 714, 717-19 (1st Cir.), *cert. denied*, 491 U.S. 908 (1989); *United States v. Hawkins*, 811 F.2d 210, 217-220 (3d Cir.), *cert.*

---

[3] Congress has since modified the statute and moved it to 18 U.S.C. § 924(e) (1994). *See Phelps*, 17 F.3d at 1337 n.4.

*denied*, 484 U.S. 833 (1987). Similarly, we have repeatedly held proof of drug quantities resulting in vastly increased sentences via the Sentencing Guidelines or 21 U.S.C. § 841(b) (1994) need only be by a preponderance of the evidence, even, in one instance, where the quantity attributed a defendant increased his sentencing range from approximately twenty years to consecutive forty year terms. *Washington*, 11 F.3d at 1515-16; *United States v. Silvers*, 84 F.3d 1317, 1320-21 (10th Cir. 1996), *cert. denied*, 117 S. Ct. 742 (1997). *See also Valdez*, 103 F.3d at 97-98 (interpreting 8 U.S.C. § 1326(b), which mandates enhanced penalties for violators of § 1326(a) who were previously deported for aggravated felonies, to be a sentence enhancement provision even though it raised the two year maximum sentence set forth in subsection (a) to twenty years); *United States v. Oliver*, 60 F.3d 547, 551-54 (9th Cir. 1995) (finding "serious bodily injury" and "death," which, if the result of a carjacking, increase the potential maximum sentence under the federal carjacking statute, 18 U.S.C. § 2119 (1994), from fifteen years to twenty-five years or life imprisonment, to be sentence enhancement factors rather than elements of the offense); *Field v. Sheriff of Wake Co., N.C.*, 831 F.2d 530 (4th Cir. 1987) (finding "serious injury" to be a sentence enhancement factor of North Carolina's driving while impaired statutes, N.C. Gen. Stat. §§ 20-138.1, 20-179, rather than an offense element).

Accordingly, we find § 111(b) refers to "bodily injury" as a sentencing enhancement factor rather than as an additional element, and therefore it need not be presented to the jury or proven beyond a reasonable doubt. *See Valdez*, 103 F.3d at 98 (sentence enhancement factors need not be proven at trial). We therefore find no error in the district court's application of § 111(b)'s ten-year maximum period of imprisonment to Mr. Segien.[4]

Mr. Segien next asserts the district court erred in applying United States Sentencing Guideline § 2A2.2 when sentencing him on Count II. He claims the district court should have applied U.S.S.G. § 2A2.4, which has a base offense level of 6, rather than § 2A2.2, which has a base offense level of 15. When reviewing a district court's application of the guidelines, we "'accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.'" *United States v. Talamante*, 981 F.2d 1153, 1158 (10th Cir. 1992) (quoting 18 U.S.C. § 3742(e) (1988)), *cert. denied*, 507 U.S. 1041 (1993).

---

[4] Mr. Segien also contends § 111 is unconstitutionally vague. Because Mr. Segien failed to present this argument before the district court, we decline to consider it. *See, e.g., Walker v. Mathers (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

Section 2A2.4 is entitled "Obstructing or Impeding Officers" and at first glance is the appropriate guideline. *See* U.S.S.G. § 1B1.2(a) (requiring sentencing courts to apply the guideline section "most applicable to the offense of conviction"). However, § 2A2.4(c)(1) states "[i]f the conduct constituted aggravated assault, apply §2A2.2 (Aggravated Assault)." Application note 1 to § 2A2.2 defines aggravated assault as "a felonious assault that involved ... serious bodily injury." The guidelines define serious bodily injury as "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. As used in the guidelines, the definition of this term is somewhat different than that used in various statutes." U.S.S.G. § 1B1.1, comment. (n.1(j)). Thus, if Mr. Segien caused Mr. Purdue "serious bodily injury" as defined in the guidelines, the district court's use of § 2A2.2 was proper.

Mr. Segien contends Mr. Purdue did not suffer serious bodily injury. However, we disagree. Mr. Purdue testified he suffered extreme pain, and clearly suffered impaired function of a bodily member (his leg), which injury required hospitalization and physical rehabilitation. Given the deference we accord the district court's application of the guidelines to the facts, we cannot say he did not

suffer "serious bodily injury" as referenced in the guidelines. Accordingly, we affirm the district court's use of § 2A2.2. *See generally United States v. Rue*, 988 F.2d 94, 96 (10th Cir. 1993) (analyzing relationship between §§ 2A2.2 and 2A2.4).

Mr. Segien also contends the district court should have employed a higher standard of proof than "preponderance of the evidence" when deciding whether Mr. Purdue suffered serious bodily injury because that finding caused a substantial increase in his sentence. However, we have previously rejected such arguments, *see Washington*, 11 F.3d at 1516, and again today reiterate that a preponderance of the evidence is sufficient proof of facts relevant to sentencing. *See, e.g., United States v. McKneely*, 69 F.3d 1067, 1078 (10th Cir. 1995).

Mr. Segien's third claim of error asserts the district court erred in sentencing him to thirty-six months incarceration on Count III because that term unlawfully exceeds the guideline sentencing range. In sentencing Mr. Segien on Count III, the district court applied U.S.S.G. § 2A2.4, which provides a base offense level of 6. The district court did not apply any adjustments to this figure. Combining an offense level of 6 with Mr. Segien's criminal history category of VI produces a sentencing range of twelve to eighteen months imprisonment.

U.S.S.G., Ch. 5 Part A, Sentencing Table. Nonetheless, the district court sentenced Mr. Segien to thirty-six months, along with one year of supervised release and a $50 special assessment. Mr. Segien contends the three-year sentence is unlawful. We review the legality of a sentence *de novo*, *United States v. Price*, 75 F.3d 1440, 1446 (10th Cir.), *cert. denied*, 116 S. Ct. 1889 (1996), and because Mr. Segien failed to object to the alleged sentencing error at trial, our review is for plain error. *See* Fed. R. Crim. P. 52(b).

The government contends that even if the district court erred in sentencing Mr. Segien outside of the guideline range, that error is harmless under the "concurrent sentence doctrine." Under that discretionary doctrine, we may hold harmless an erroneous sentence premised on a valid conviction if such sentence runs concurrently to an equal or longer sentence based upon another charge of an indictment, because the defendant suffers no actual prejudice from the erroneous sentence. *See United States v. Montoya*, 676 F.2d 428, 432-33 (10th Cir.), *cert. denied*, 459 U.S. 856 (1982); *United States v. Riebold*, 557 F.2d 697, 705 (10th Cir.), *cert. denied*, 434 U.S. 860 (1977). We agree; the error is harmless.

Mr. Segien argues the concurrent sentence doctrine is inapplicable because the district court also fined him a $50 special assessment on Count II, citing

*United States v. Sullivan*, 919 F.2d 1403, 1429 n.42 (10th Cir. 1990). However, he misunderstands our precedent. In *Sullivan*, the defendant challenged the conviction itself, *see id.*, and therefore, if successful, would not have had to pay the special assessment. Here, even if we reversed the district court, the conviction would still stand, albeit perhaps with a reduced sentence, as would the special assessment. Thus, our application of the doctrine causes Mr. Segien no prejudice. *Cf. Ray v. United States*, 481 U.S. 736 (1987) (discussing applicability of concurrent sentence doctrine where special assessments are charged).

Fourth, Mr. Segien charges Counts II and III are based on the same conduct, a single, continuing episode of resistance, and are therefore multiplicious. He asserts Count III, the count producing the lesser punishment, should be vacated. "Claims of multiplicity are subject to *de novo* review." *United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir.), *cert. denied*, 116 S. Ct. 2502 (1996).

"'[M]ultiplicity refers to multiple counts of an indictment which cover the same criminal behavior.'" *United States v. Fleming*, 19 F.3d 1325, 1330 (10th Cir.) (quoting *United States v. Dashney*, 937 F.2d 532, 540 n.7 (10th Cir. 1991)), *cert. denied*, 513 U.S. 826 (1994). "Multiplicious counts are improper because

they allow multiple punishments for a single criminal offense." *United States v. Wood*, 57 F.3d 913, 919 (10th Cir. 1995). In evaluating multiple § 111 charges for multiplicity, we look to the "number of distinguishable acts of assault rather than the number of federal officers assaulted." *United States v. Rivera Ramos*, 856 F.2d 420, 422 (1st. Cir. 1988), *cert. denied*, 493 U.S. 837 (1989). The evidence must show "the actions and intent of [the] defendant constitute distinct successive criminal episodes, rather than two phases of a single assault." *Smith v. United States*, 418 F.2d 1120, 1121 (D.C. Cir.), *cert. denied*, 396 U.S. 936 (1969).

It appears from the record the charges are based on two different events, separated in both time and location. Count II is premised on Mr. Segien's initial struggle with Mr. Purdue. After this scuffle, prison officers placed Mr. Segien under control and walked him to the Lieutenant's office, approximately fifty yards away. Then, when they arrived at the Lieutenant's office, Mr. Segien committed the actions upon which Count III rests. Though, admittedly, Mr. Segien's fight with Mr. Purdue and his later threat and expectoration were certainly related, other circuits have upheld multiple § 111 charges premised on actions involving a single officer where the underlying conduct was equally connected, if not more so. *See United States v. Moreno*, 630 F.2d 338 (5th Cir. 1980) (affirming the imposition of consecutive sentences of incarceration for two § 111 charges where

the first charge was based upon assault with an automobile and the second upon assault with a machete which occurred immediately after the first); *United States v. Farries*, 459 F.2d 1057, 1064 (3d Cir.) (finding multiple § 111 charges, the first premised on hitting an officer in the head with a telephone and the second based on kicking the same officer when he fell to the floor, not redundant), *cert. denied*, 409 U.S. 888 (1972) & 410 U.S. 912 (1973).  Accordingly, we affirm the district court's finding the charges are not multiplicious.

Next, Mr. Segien asserts the district court twice erred in evidentiary rulings.  First, he claims the district court erred in allowing the government to introduce evidence of three past incidents of misconduct, asserting Fed. R. Evid. 404(b) bars admission of that evidence.  We review the district court's admission of evidence under Fed. R. Evid. 404(b) for an abuse of discretion.  *United States v. Olivo*, 69 F.3d 1057, 1062 (10th Cir. 1995).

Rule 404(b) bars the admission of evidence of other bad acts of a defendant if intended to prove the defendant's character and that he or she likely acted in conformity therewith on a particular occasion:  "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  However, such

evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...." *Id.* Indeed, the rule is one of inclusion, rather than exclusion, unless the evidence is introduced for the impermissible purpose or is unduly prejudicial. *United States v. Cuch*, 842 F.2d 1173, 1176 (10th Cir. 1988).

In reviewing the district court's admission of the controverted evidence, we apply a four-part test examining whether: (1) the prosecution offered the evidence for a proper purpose under Rule 404(b); (2) the evidence is relevant under Fed. R. Evid. 401; (3) the evidence's probative value is not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, gave a proper instruction limiting the jury's consideration of the evidence to the purpose for which it was admitted. *United States v. Wilson*, 107 F.3d 774, 782 (10th Cir. 1997) (citing *Huddleston v. United States*, 485 U.S. 681, 691-91 (1988)). We require the government and the court to "precisely articulate the purpose of the proffered evidence." *United States v. Birch*, 39 F.3d 1089, 1093 (10th Cir. 1994) (citing *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985), *cert. denied*, 474 U.S. 1081 (1986)); *Olivo*, 69 F.3d at 1064-65.

Here, Mr. Segien objects to the district court's admission of evidence of three previous instances of conflict between himself and prison officers, all of which occurred in 1994. In two of these incidents, Mr. Segien assaulted prison officers by spitting on them, once also threatening the recipient. In the third incident, Mr. Segien assaulted an officer by punching him in the side. The district court refused the prosecution's proffer of evidence of fourteen other incidents, some of which also involved instances of spitting or physical assault.[5]

The prosecution stated, and the court found, the admitted evidence showed intent and absence of mistake, two purposes not barred by Rule 404(b). During his testimony, Mr. Segien claimed he did not physically assault Mr. Purdue, explicitly denying "grabbing or squeezing" his genitals, and stating that any contact with same was unintentional. He also claimed any spit landing on Mr. Purdue was an unintentional result of yelling. Thus, the evidence of two prior incidents where Mr. Segien spit on prison officers, and the time he physically assaulted an officer, was relevant to show Mr. Segien's intent to, and absence of mistake in, physically assaulting and later spitting on Mr. Purdue. *See Hynes v.*

---

[5] For example, in one case Mr. Segien allegedly spat upon a physician's assistant, on another date he allegedly struck a prison officer in the chest, and he allegedly assaulted officers twice by throwing urine on them.

*Coughlin*, 79 F.3d 285, 290 (2d Cir. 1996) ("Where intent is in issue, evidence of other acts that bear on intent is properly admissible under Rule 404(b). For example ... where [a prisoner] testifies that he struck a corrections officer reflexively and by accident, the trial court may properly admit evidence of the [prisoner's] prison disciplinary record of assaults to show the absence of mistake."). We do not believe the district court abused its discretion in finding this evidence's probative value was not substantially outweighed by unfair prejudice, and we note the court gave a detailed and proper limiting instruction to the jury. Accordingly, finding all of the requirements above cited satisfied, we cannot say the district court abused its discretion in admitting the controverted evidence, and therefore affirm its evidentiary ruling.

The second evidentiary ruling Mr. Segien challenges is the district court's refusal to allow him to introduce evidence of the subsequent incident in the special housing unit. He asserts the "beating" prison guards inflicted on him there is relevant to his claim his earlier actions were in self-defense, contending it is "illustrative of the conduct which [he] sought to protect himself from and was relevant to show his state of mind in defending himself from the officers in the earlier incident." Again, we review the district court's evidentiary ruling for an abuse of discretion. *Olivo*, 69 F.3d at 1062.

The district court found the evidence Mr. Segien sought to introduce "did not address the issue of self defense" because the special housing incident occurred subsequently to the events at issue at trial and involved different prison officers. We agree. If Mr. Segien had offered objective evidence of a common plan of assault among Leavenworth prison officers, or of prior assaults he had endured at the hands of such officers, perhaps the subsequent incident may have been relevant. However, here Mr. Segien engaged in an unjustified "preemptive strike" upon Officer Rodgers and Mr. Purdue. The subsequent conflict between himself and different officers, arising from his own actions, simply cannot be used to justify his earlier conduct. Accordingly, we affirm the district court's refusal to admit evidence of the later incident.[6]

Lastly, Mr. Segien appeals the district court's refusal to grant a downward departure pursuant to 18 U.S.C. § 3553(b) (1994) and U.S.S.G. § 5K2.0. These provisions authorize departures if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0.

---

[6] Because we find the controverted evidence lacking in relevance to the trial issues, we do not engage in the full four-part test earlier noted.

At sentencing, Mr. Segien asserted the incidents in the special holding unit and his resulting ear injury are such mitigating circumstances. The district court declined to grant the requested departure, stating: "The grounds on which the defendant seeks a downward departure are not part of the conduct relevant in sentencing the defendant. The assault causing the defendant's alleged hearing loss involves an instance that is separate in time and distinct in nature and distinct as to the parties."

We have jurisdiction to review a district court's refusal to grant a departure only if the district court erroneously believed it lacked authority to depart.[7] *United States v. Belt*, 89 F.3d 710, 714-15 (10th Cir. 1996). "'[U]nless the judge's language unambiguously states that the judge does not believe he has authority to downward depart, we will not review his decision.'" *Id.* at 715 (quoting *United States v. Rodriguez*, 30 F.3d 1318, 1319 (10th Cir. 1994)). Because the district court's statement does not so declare, we lack jurisdiction to review this issue.

We **AFFIRM** Mr. Segien's sentence.

---

[7] We may, of course, review sentences that are illegal or the result of incorrect applications of the guidelines. *Belt*, 89 F.3d at 714. However, neither of these jurisdictional bases is applicable here.