**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 11-4065

AARON THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(1:10-cr-00050-IMK-1)

Argued: December 9, 2011

Decided: January 25, 2012

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

## COUNSEL

**ARGUED:** Martin Patrick Sheehan, SHEEHAN & NUGENT, PLLC, Wheeling, West Virginia, for Appellant. Brandon Scott Flower, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee. **ON**

**BRIEF:** William J. Ihlenfeld, II, United States Attorney, Wheeling, West Virginia, for Appellee.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Aaron Thomas, an inmate at the United States Penitentiary Hazelton in Preston County, West Virginia ("Hazelton"), appeals his convictions and sentence for two counts of assaulting a correctional officer in violation of 18 U.S.C. § 111. Thomas raises an array of challenges. We find none meritorious and so affirm the judgment of the district court in all respects.

I.

At the time of the offenses at issue here, Thomas was serving a 300-month sentence imposed in 1995 for possession with intent to distribute cocaine base; he had already amassed forty-two disciplinary infractions at various federal institutions. Accordingly, Thomas was housed in Hazelton's A-1 Unit, a location reserved for inmates with prior disciplinary problems. The A-1 Unit has a daily 4:00 p.m. standing count, during which correctional officers check each cell to ensure that all inmates are present and not experiencing any medical emergencies.

On January 26, 2009, correctional officers Lacy Richards and William Goss conducted the 4:00 p.m. count. When they arrived at Thomas's cell they found him lying on the floor. Officer Richards ordered Thomas to stand, but Thomas refused her repeated commands. Eventually, the officers moved on and resumed their count.

In addition to conducting the count, Officer Richards's duties required her to perform five cell searches per shift. On

that day, she decided to search the cells of the inmates who had refused to stand for the 4:00 p.m. count. When Officer Richards entered Thomas's cell to begin her search, Thomas's cellmate, Nathaniel Tarver, followed her. Tarver asked Officer Richards if he could remove some legal mail. Officer Richards refused and ordered Tarver to leave because inmates are not permitted in the cell during a search. Tarver eventually complied and went to find Thomas and inform him that Officer Richards was searching their cell. Upon hearing the news, Thomas returned to the cell.

Officer Richards testified that when Thomas returned to the cell, he blocked the door with his body and refused to comply with her repeated orders to leave. The officer testified that Thomas threatened her, telling her she was "going to die in this cell tonight" and that she "would be leaving in a body bag." Feeling threatened, Officer Richards radioed Officer Aaron Wassick, also on duty in the A-1 Unit, for assistance. When Officer Richards attempted to leave the cell, Thomas pushed her with both hands. Officer Richards then radioed a general alarm, which went to all staff radios. Before any officers could respond, however, Officer Richards testified that Thomas punched her in the face. Officer Wassick similarly testified that as he ran to the cell, he saw Thomas strike Officer Richards. Officer Wassick and other officers eventually restrained Thomas, who continued verbal abuse of the officers.

A grand jury indicted Thomas on two counts of assault in violation of 18 U.S.C. §§ 111(a) and (b).[1] Count One alleges

---

[1]As is relevant here, under 18 U.S.C. § 111(a), an individual commits a felony when he "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" a federal official "engaged in . . . the performance of official duties," and "such acts involve physical contact with the victim of that assault or the intent to commit another felony." The offender receives an enhanced penalty under 18 U.S.C. § 111(b) when, in the commission of the acts proscribed by § 111(a), he "uses a deadly or dangerous weapon . . . or inflicts bodily injury."

that Thomas "threaten[ed] to kill" Richards while Count Two alleges that Thomas "str[uck] her." Thomas waived his right to a jury trial and proceeded to a bench trial.

The primary evidence at trial came from the testimony, described above, of Officers Richards, Goss, and Wassick. The court also considered a hallway video of the incident, which provided a limited view—showing only that Thomas took about one step into the cell and that the entire encounter lasted approximately thirty-three seconds. The Government additionally introduced evidence of Officer Richards's injuries, including photographs of her red and swollen face, and information about her treatment at the Hazelton infirmary and Ruby Memorial Hospital, where doctors prescribed pain medication for her injuries.

The testimony of inmates Thomas and Tarver constituted the defense case. Thomas testified that he did not refuse to stand for the count. He acknowledged returning to his cell after the count and, at that time, raising his voice to Officer Richards. Thomas denied, however, either threatening Officer Richards or physically assaulting her. Indeed, Thomas testified that Officer Richards attempted to assault him. Tarver testified that he had a limited view of the events (at times with his back to the cell), but that he never heard Thomas raise his voice or enter more than a step inside the cell.

The district court found neither Thomas nor Traver "entirely credible." The court specifically found Thomas not credible as to: (1) what happened when he returned to the cell, (2) Officer Richards's alleged assault on him, and (3) his claims that he "never touched, struck or threatened" Officer Richards. The district court further found that Thomas made statements to Officer Richards like "you're not going to get out of here alive" that put her in fear of her safety and that he had the ability to carry out these threats given that he was "physically larger and stronger" than Officer Richards and no other officers were present when he made these threats. The

court also found that Thomas's "physical attack" on Officer Richards "followed on the threat" and resulted in redness, swelling, and bruising that required medical treatment. The district court then found that, as to Count One, Thomas was guilty of threatening to kill Officer Richards with intent to commit another felony (the ensuing physical assault) in violation of § 111(a), but not guilty of imposing injury on her in violation of § 111(b). As to Count Two, the court found Thomas had inflicted bodily injury on Officer Richards and so violated both § 111(a) and § 111(b). The court sentenced Thomas to 96 months imprisonment on Count One and 108 months on Count Two, to run concurrently with each other but consecutive to Thomas's previous sentence.

## II.

Thomas first raises two indictment challenges. Because Thomas failed to raise these challenges in the district court, we review for plain error. *See, e.g.*, *United States v. Rendelman*, 641 F.3d 36, 43 & n.9 (4th Cir. 2011); *United States v. King*, 628 F.3d 693, 699 (4th Cir. 2011). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (internal quotation marks omitted). Even if all three of these conditions are met, "an appellate court may . . . exercise its discretion to notice a forfeited error . . . only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467 (internal quotation marks omitted). Neither of the asserted indictment errors in this case meets this rigorous standard.

## A.

Thomas contends that we should recognize as plain error the failure of Count One of the indictment to allege an intent to commit another felony as required by 18 U.S.C. § 111(a) and the failure of Count Two to allege infliction of bodily

injury as required by 18 U.S.C. § 111(b).**²** The Government concedes that these defects were plain errors, but contends that they did not "seriously affect[ ] the fairness, integrity, or public reputation of [the] judicial proceedings." *Johnson*, 520 U.S. at 467. We must agree.

Officer Richards offered detailed testimony of the threats and injuries inflicted by Thomas. Officer Wassick also testified that Thomas struck Officer Richards in the face. Moreover, three other officers testified to observing those injuries, which were also documented in medical records. In the face of this evidence, the district court understandably found the testimony of defendant Thomas and his cellmate, Tarver, denying the threats and assault not credible. In doing so, the court made specific findings as to Thomas's threats to kill Officer Richards and the bodily injury his physical attack caused her. These findings clearly satisfy the elements missing from the indictment.

Moreover, in this case, we need not attempt to weigh the Government's evidence against that offered by the defendant. The experienced district judge, as the trier of fact, expressly concluded that the defendant presented *no credible evidence*. Indeed, the court found defendant Thomas so clearly lied at trial that it imposed a two-level obstruction of justice enhancement to his sentence.

In sum, while we do not discount the seriousness of the errors in this indictment, we cannot find them grounds for reversal given the overwhelming evidence of Thomas's guilt.

---

**²**Thomas also attempts to argue that trial counsel preserved these challenges. Examination of the trial transcript, however, belies this assertion. The only discussion of the allegations in Count One simply clarified that the indictment's reference to a verbal threat required the Government to prove that particular act in order to secure a conviction. While the district court appears to have invited defense counsel to address Count Two's omission of the "bodily injury" element, the record does not indicate that counsel ever made such an argument.

To do so would itself seriously affect the "fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467.

B.

Thomas also argues that the district court plainly erred in failing to find the indictment was "'multiplicitous,' [in] that a single offense was charged in multiple—here, two—counts." *United States v. Goodine*, 400 F.3d 202, 207 (4th Cir. 2005). Multiplicitous indictments are invalid because they risk assigning "multiple punishments for the same crime." *Id.* Thomas argues that because the events at issue lasted only thirty-three seconds and involved a single location and victim, they can support only a single assault.

Thomas heavily relies on *Ladner v. United States*, 358 U.S. 169 (1958), in which the Supreme Court interpreted the statutory predecessor to 18 U.S.C. § 111. In *Ladner*, the Court rejected the view that "the wounding of . . . two officers result[ing] from a single discharge of the gun" constituted "two assaults." *Id.* at 178. Rather, the Court held that a single shot fired at multiple officers constituted a single offense. *Id.*; *see also United States v. Feola*, 420 U.S. 671, 677-78 (1975) (discussing *Ladner*). *Ladner* remains good law.

Courts have consistently applied *Ladner* to determine if a course of conduct warrants multiple assault charges by determining "whether there is more than one act resulting in the assaults, not whether more than one federal officer is injured by the same act." *United States v. Theriault*, 531 F.2d 281, 285 (5th Cir. 1976); *see also United States v. Hopkins*, 310 F.3d 145, 152 (4th Cir. 2002) (because defendant "engaged in more than one act of forcibly assaulting . . . a federal officer," the indictment was not "duplicative"); *United States v. Rivera Ramos*, 856 F.2d 420, 422 (1st. Cir. 1988) (looking to "the number of distinguishable *acts* of assault").

An indictment may divide a course of conduct into separate assaults only when the Government demonstrates that "the actions and intent of [the] defendant constitute distinct successive criminal episodes, rather than two phases of a single assault." *United States v. Segien*, 114 F.3d 1014, 1022 (10th Cir. 1997), *abrogation on other grounds recognized by United States v. Hathaway*, 318 F.3d 1001, 1006 (10th Cir 2003); *see also United States v. Shumpert Hood*, 210 F.3d 660, 663 (6th Cir. 2000); *Smith v. United States*, 418 F.2d 1120, 1121 (D.C. Cir. 1969). Courts look to a variety of factors to determine if a series of acts constitute more than mere phases of a single assault and so can support multiple assault charges. *See, e.g.*, *Segien*, 114 F.3d at 1022 (evidence of "different events, separated in both time and location"); *United States v. Hodges*, 436 F.2d 676, 678 (10th Cir. 1971) (assailant gave each officer "individual attention, and in succession").

Here, in sharp contrast to *Ladner*, the district court determined that Thomas committed multiple acts—both verbally threatening Officer Richards *and* punching her in the face. Moreover, the Government offered evidence that established significant intervening acts between the verbal threat and the physical assault. After the verbal threat, Officer Richards radioed Officer Wassick for assistance. Then, after Thomas pushed her, Officer Richards sounded a general assistance alarm. Thomas testified that he understood the significance of both of these assistance calls. After both of these calls for assistance, Thomas physically assaulted Officer Richards. Thus *between* the times of Thomas's two assaults of Officer Richards (one verbal and one physical), three events intervened –- (1) Officer Richards radioed Officer Wassick for assistance, (2) Thomas pushed Officer Richards, and (3) Officer Richards then put out a general assistance alarm.

These three intervening events provide sound support for the conclusion that Thomas's assaults were distinct. While Thomas verbally assaulted Officer Richards in reaction to her search of his cell, he physically assaulted her in reaction to

her refusal to be deterred by his push and her two calls for assistance. Thomas's deliberate decision to escalate the confrontation in the face of new factual circumstances substantiates the propriety of charging two distinct assaults. For this reason, the indictment was not multiplicitous.[3]

## III.

Next, Thomas argues that the district court improperly sustained hearsay objections to his testimony, thereby denying him the ability to adequately present his defense. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010). "A court has abused its discretion if its decision 'is guided by erroneous legal principles' or 'rests upon a clearly erroneous factual finding.'" *Id.* (internal quotation marks omitted).

The first challenged hearsay ruling occurred during Thomas's testimony describing his reaction when Tarver informed him of Richards's search of their cell. Thomas testified:

> I was preparing to wash my clothes and I noticed that my cellie was coming toward the shower so I moved some of my clothes to see what he was doing and he was like, told me that Ms. Richards was shaking the cell down. He knows the situation far as me and Ms. Richards prior to this because I had conversated [sic] with him.

---

[3]Thomas contends that if we find that his trial counsel failed to preserve his contentions as to any indictment error, we should find that counsel was constitutionally ineffective. We have repeatedly held that unless a claim of ineffective assistance of counsel conclusively appears in the record, we will not address it on direct appeal, but only on collateral review. *United States v. Baldovinos*, 434 F.3d 233, 239 (4th Cir. 2006). Ineffectiveness of trial counsel in this case does not "conclusively appear from the record," and Thomas failed to raise this issue in his opening brief. Accordingly, we decline to address it.

The district court then sustained a hearsay objection to testimony regarding what Thomas told Tarver. Thomas now claims that his testimony was not intended to assert the truth of his statements—which would qualify as hearsay under Federal Rule of Evidence 801(c)—but instead was only meant to establish his state of mind. We find no reversible error in preventing Thomas from testifying in this manner. Thomas could (and earlier did) testify directly (rather than through his statements to Tarver) as to his prior history with Richards.

Thomas also challenges exclusion of his testimony regarding threats that an officer known as "Big Show" made to Thomas after Thomas was restrained. Thomas again argues that these threats were not hearsay because they were not intended to prove the truth of the matter but instead went to Thomas's state of mind. Regardless of the intended purpose of these statements, this testimony was properly excluded because it was not relevant. *See* Fed. R. Evid. 401 (defining relevant evidence as tending to make a fact "of consequence in determining the action" more or less probable). While we do not discount the seriousness of the alleged threats, they undisputedly occurred after the assaults on Officer Richards and after the officers restrained Thomas. Accordingly, these events bear no relation to whether Thomas violated 18 U.S.C. § 111. The district court therefore did not abuse its discretion in excluding them.

IV.

Finally, Thomas challenges his sentence arguing that the district court improperly applied U.S.S.G. § 2A2.2 ("Aggravated Assault") rather than U.S.S.G. § 2A2.3 ("Minor Assault"). This asserted error, however, is premised on Thomas's contention that he was improperly convicted of enhanced felony assault under 18 U.S.C. § 111(b) because the indictment omitted material elements of that crime. Having concluded that Thomas was properly convicted under § 111(b), we therefore also conclude that he was properly sentenced

under § 2A2.2. *See* U.S.S.G. § 2A2.2(b)(6) (applying 2 level enhancement if "defendant was convicted under 18 U.S.C. § 111(b)").

## V.

For the reasons set forth above, we affirm the judgment of the district court in all respects.

*AFFIRMED*