**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JACK WITT VORIS,
*Defendant-Appellant.*

No. 18-10410

D.C. No.
4:16-cr-02267-
JGZ-DTF-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Submitted May 11, 2020[*]
San Francisco, California

Filed July 7, 2020

Before: Sidney R. Thomas, Chief Judge, and Michelle T.
Friedland and Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**SUMMARY**[**]

**Criminal Law**

In a case in which a jury convicted the defendant on six counts of assault on a federal officer with a deadly or dangerous weapon (18 U.S.C. § 111(a)(1) and (b)), six counts of discharging a firearm in furtherance of a crime of violence (18 U.S.C. § 924(c)(1)(A)), and one count of possession of a firearm by a convicted felon (18 U.S.C. §§ 922(g)(1), 924(a)(2)), the panel reversed one assault conviction and one § 924(c) conviction, affirmed the district court in all other respects, and remanded.

The defendant argued that his sentences and convictions for five assault counts based on four shots he fired toward the door of his motel room are multiplicitous in violation in violation of Double Jeopardy Clause. Applying *Ladner v. United States*, 358 U.S. 169 (1958), the panel concluded that because the defendant fired four shots, only four assault convictions are constitutionally permissible, even though at least five officers came under fire from those four shots. Because the statutory language construed in *Ladner* is nearly identical to the language in the current version of § 111, the panel rejected the government's argument that *Ladner* is not controlling. The panel held that the defendant met the plain error test for reversal of one assault conviction. The panel rejected the defendant's argument that because he fired the four shots in quick succession, he committed only one assaultive act and can be convicted of only one assault.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Because each assault conviction served as a predicate offense for each § 924(c) conviction, the panel reversed one § 924(c) conviction. The panel remanded to the district court with instructions to vacate one § 111 conviction and one § 924(c) conviction and resentence the defendant accordingly.

The defendant argued that § 924(c)(1)(A) should be interpreted as requiring a separate firearm use to support each § 924(c) conviction, and that he can be convicted of only one § 924(c) count for the shots he fired toward the door because he only used his firearm once (though he fired four shots). The panel observed that under the plain and unambiguous language of the statute, each discharge may be considered a use within the meaning of the statute. The panel therefore concluded that it was appropriate to charge the defendant with four § 924(c) offenses, and affirmance is compelled.

The panel held that Section 403 of the First Step Act of 2018—which amended § 924(c)(1)(C) so that a 25-year sentence enhancement no longer applies when all of a defendant's § 924(c) convictions arise in the same proceeding—does not apply to cases pending on appeal in which the district court sentenced the defendant before the enactment of the First Step Act. The panel expressed no view on whether the First Step Act applies on resentencing.

The panel held that the district court did not abuse its discretion in denying the defendant's motions for a mistrial and new trial based on the admission of an officer's testimony containing improper character evidence, where the prejudice was minimal.

**COUNSEL**

Carol Lamoureux and Joshua F. Hamilton, Hernandez & Hamilton PC, Tucson, Arizona, for Defendant-Appellant.

Michael Bailey, United States Attorney; Robert L. Miskell, Appellate Chief; Matthew C. Cassell, Assistant United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

**OPINION**

BENNETT, Circuit Judge:

A jury convicted Jack Voris on six counts of assault on a federal officer with a deadly or dangerous weapon in violation of 18 U.S.C. § 111(a)(1) and (b), six counts of discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).  The district court sentenced him to 1,750 months (about 146 years) in prison.

Voris argues on appeal that (1) five assault convictions are multiplicitous, (2) five § 924(c) convictions are multiplicitous, (3) he is entitled to resentencing under § 403 of the First Step Act, and (4) the district court abused its discretion in denying his motions for a mistrial and new trial.

We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.  We reverse one assault conviction and one § 924(c) conviction, and remand to the district court with instructions to vacate one assault conviction and one § 924(c) conviction and to resentence Voris.  We affirm the district court in all other respects.

## I. Factual and Procedural Background

Voris was wanted on several outstanding warrants. In October 2016, nine officers of the U.S. Marshals Task Force ("Task Force") went to the Quality Inn motel near Phoenix International Airport, as they believed Voris and his girlfriend were staying in a second-floor room. The nine officers surrounded the room. Two were in the parking lot behind the room. Five went to the front door of the room in a "stack" formation, where individuals form a straight line and are very close to one another. Two were also located outside the front of the room but were not part of the stack formation.

An officer in the stack knocked on the door. A few seconds later, Voris opened the door and then quickly slammed it shut and locked it. Voris later admitted that he knew the individuals outside the room were police officers. Voris then tried to escape out the back window of his room. After Voris opened the window, Officer Garcia shouted at him, "Police, Police, let me see your hands." Voris responded by reaching out the window with his gun and firing one shot at Officer Garcia. He missed. Officer Garcia and the other officer in the parking lot returned fire, also missing.

Voris then pushed his girlfriend out the door of his room.[1] The officers moved her out of the way, and the stack moved a few feet away to the side of the door. A few seconds later, Voris fired four shots toward the front of the room. Two bullets exited through the bottom of the front

---

[1] There is an immaterial discrepancy in the record over whether Voris's girlfriend exited the room before or after Voris fired out the back window.

door and two hit a wall next to the door but did not exit the wall.  No officer was hit.

The officers retreated, evacuated neighboring rooms, blocked the area, and called for backup.  Voris surrendered after several hours of negotiations.

The government charged Voris with nine counts of assault on a federal officer with a deadly or dangerous weapon in violation of 18 U.S.C. § 111(a)(1) and (b), nine counts of discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Officer Smith testified at Voris's trial as to how the Task Force generally plans an operation to arrest a suspect.  He explained that Task Force members consider, among other things, why the person is wanted.  Officer Smith then explained that the officers were wearing protective equipment, and some were armed with rifles.  Later, when asked what happened after Voris opened and closed the door, Officer Smith testified that "I called out to our team that we're going to treat this as a barricaded situation because we were already in possession of information related to Mr. Voris' criminal history."  The government immediately redirected Officer Smith's testimony by asking him how far the stack had moved after the door closed and telling Officer Smith that "[w]e don't need to initially get into the why."

Later that day, after the court recessed and excused the jury, Voris moved for a mistrial.  He argued that the comment about his "criminal history" and the context in which it was made would cause the jury to speculate that he had a "horrible criminal history requiring immediate use of a barricade."  The district court denied the motion the next

day after reviewing the transcript. The court determined that a mistrial was not warranted because the reference to Voris's criminal history was brief and vague, and the jurors already knew that Voris was a convicted felon. The court also decided that a limiting instruction would do more harm than good because it would highlight the testimony for the jury. Voris did not object to the court's decision not to give a limiting instruction.

After the four-day trial, the jury convicted Voris on six counts of assault on a federal officer with a deadly or dangerous weapon, six counts of discharging a firearm in furtherance of a crime of violence, and one count of being a prohibited possessor of a firearm. The six assault and six § 924(c) convictions were based on the shots that Voris fired toward Officer Garcia in the parking lot and the five officers in the stack formation. Voris moved for a new trial based on Officer Smith's testimony referencing his criminal history. The district court denied the motion for essentially the same reasons it had denied the mistrial motion.

The district court sentenced Voris on October 9, 2018. The court adopted the presentence report's recommended sentence and sentenced Voris to 1,750 months. Voris's sentence consisted of concurrent terms of 130 months on each of the six assault counts and prohibited possessor count, a consecutive 10-year sentence for the first § 924(c) conviction, and five consecutive 25-year sentences for the remaining five § 924(c) convictions.

Voris appeals his convictions and sentences related to the five assault counts and five § 924(c) counts based on the four gunshots that he fired toward the front door. He does not appeal from the convictions based solely on his firing out of his motel room's back window. Voris also argues that he is entitled to resentencing under § 403 of the First Step Act,

which amended when the 25-year minimum in § 924(c)(1)(C) applies, but which became law after the district court sentenced him. Finally, he challenges the district court's denial of his motions for a mistrial and new trial.

## II. Standard of Review

We review Voris's challenges to his assault convictions for plain error as he concedes that he failed to raise them below. "Under plain error review, a defendant 'must show (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Zalapa*, 509 F.3d 1060, 1064 (9th Cir. 2007) (quoting *United States v. Smith*, 424 F.3d 992, 1000 (9th Cir. 2005)).

Voris contends that de novo review applies to his § 924(c) statutory interpretation argument because he sufficiently raised this argument below. He alternatively argues that even if he failed to raise it below, we should apply the "pure question of law" exception to plain error review. *See United States v. Wijegoonaratna*, 922 F.3d 983, 992 (9th Cir. 2019). Because it does not affect our conclusion, we assume without deciding that de novo review applies.

We similarly need not decide on the appropriate standard of review to apply to Voris's arguments related to the First Step Act because his arguments fail even under the de novo standard.

Finally, we review the district court's denial of a motion for a mistrial and new trial for abuse of discretion. *See United States v. Dorsey*, 677 F.3d 944, 954 (9th Cir. 2012). The burden is on Voris to show that the district court abused

its discretion.  *See United States v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980).

## III.  Analysis

## A.  Assault Convictions

Voris argues that his sentences and convictions for the five assault counts based on the four shots he fired toward the door are multiplicitous in violation of the Double Jeopardy Clause.  *See United States v. Chilaca*, 909 F.3d 289, 291 (9th Cir. 2018) ("The Double Jeopardy Clause of the Fifth Amendment protects against multiple criminal punishments for the same offense.").  We conclude that because Voris fired four shots, only four assault convictions are constitutionally permissible, even though at least five officers came under his fire from those four shots.  Thus, one assault conviction is multiplicitous and must be reversed. But Voris fails to show that the remaining four assault convictions are multiplicitous.

In *Ladner v. United States*, 358 U.S. 169 (1958), the Supreme Court construed 18 U.S.C. § 254, the predecessor statute to § 111 (the statute of conviction for the assaults here).  *Id.* at 171, 176 n.4.  The Court applied the rule of lenity and held that the petitioner could be found guilty of only one assault if he discharged his firearm only once, no matter how many officers may have been impacted.  *Id.* at 177–78.  *Ladner* establishes that one gunshot can support only one assault under § 111.  Thus, Voris can be convicted of only four assaults based on the four shots he fired toward the door.

The government argues that *Ladner* is not controlling because the statutory language in the current version of § 111 differs from the language the Court construed in

*Ladner*.  We disagree because the statutory language the Court construed in *Ladner* is nearly identical to the language in § 111.**²**

Voris meets the plain error test for one assault conviction.  The error was plain because *Ladner* clearly establishes that one gunshot can support only one assault conviction under § 111.  *See United States v. Armijo*, 5 F.3d 1229, 1233 (9th Cir. 1993) ("[T]he error must be 'plain' in that it was clear under current law.").  In addition, the multiplicitous conviction affected Voris's substantial rights.  First, he was sentenced for the conviction.  *See Zalapa*, 509 F.3d at 1064–65 (holding that collateral consequences from "an erroneously-imposed sentence, even a concurrent sentence," affect a defendant's substantial rights).  More importantly, the multiplicitous conviction supported one of the § 924(c) convictions, which increased Voris's sentence by 25 years.  Finally, the proceedings were fundamentally unfair because the multiplicitous conviction violated Voris's Fifth Amendment right not "to be twice put in jeopardy" for "the same offence."  U.S. Const. amend. V; *see also Zalapa*, 509 F.3d at 1065 (holding that multiplicitous convictions subjected the defendant to double jeopardy, making "his convictions fundamentally unfair").

---

**²** Section 254 provided:  "Whoever shall forcibly resist, oppose, impede, intimidate, or interfere with any person (if he is a federal officer . . .) while engaged in the performance of his official duties, or shall assault him on account of the performance of his official duties, shall be imprisoned . . . ."  *Ladner*, 358 U.S. at 170 n.1 (internal alterations omitted) (quoting 18 U.S.C. § 254 (1940)).  Section 111 provides: "Whoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . . shall [be fined or imprisoned, or both]."  18 U.S.C. § 111(a).

Voris, however, fails to show that the district court plainly erred in entering judgment on the remaining four assault convictions. He argues that because he fired the four shots in quick succession, he committed only one assaultive act and can be convicted of only one assault. Voris primarily relies on *Ladner*, but *Ladner* did not consider whether multiple shots fired in quick succession must be considered as only one assault. Indeed, in *Ladner*, the Court suggested that multiple shots might constitute more than one violation. 358 U.S. at 178 n.6 (stating that "[i]n view of the trial judge's recollection that more than one shot was fired . . . we cannot say that it is impossible that petitioner was properly convicted of more than one offense, even under the principles which govern here" (internal quotation marks omitted)).

Moreover, the out-of-circuit cases Voris cites do not support his position that the district court plainly erred in entering judgment on four of the assault convictions. None addressed the question here of whether multiple gunshots fired in quick succession must be construed as one assaultive act.[3]

---

[3] *See United States v. Thomas*, 669 F.3d 421, 426 (4th Cir. 2012) (holding that orally threatening and punching an officer were two distinct assaults); *United States v. Segien*, 114 F.3d 1014, 1017, 1022 (10th Cir. 1997) (affirming two § 111 convictions against one victim when the defendant's acts—(1) grabbing the victim's testicles and (2) orally threatening and spitting on the victim—were separated in time and location), *overruled on other grounds as recognized in United States v. Hathaway*, 318 F.3d 1001, 1006 (10th Cir. 2003); *United States v. Rivera Ramos*, 856 F.2d 420, 422–24 (1st Cir. 1988) (affirming three § 111 violations when each agent was separately held and threatened at gunpoint at different times during the incident); *United States v. Wesley*, 798 F.2d 1155, 1156–57 (8th Cir. 1986) (affirming two § 111 convictions when a prisoner, during a struggle with guards, struck one

Nor does logic support Voris's position. Voris committed four assaultive acts by firing his weapon four separate times toward the door. Fortuitously, none of the officers was hit, but four (or more) could have been hit. And the evidence clearly supports that Voris knew multiple officers were in the precise area he targeted when he intentionally fired his deadly weapon through a wooden door and surrounding area. As long as there were four assaultive acts and at least four potential victims, there were four assaults. *See United States v. Duran*, 96 F.3d 1495, 1498, 1509–10 (D.C. Cir. 1996) (affirming four § 111 convictions where the defendant fired a "barrage" of about nine bullets across the North Lawn of the White House to fend off four Secret Service agents); *Thorne v. United States*, 406 F.2d 995, 998–99 (8th Cir. 1969) (holding the petitioner was properly sentenced on two § 111 counts where the petitioner fired more than one shot during a scuffle with two agents); *Cameron v. United States*, 320 F.2d 16, 17–18 (5th Cir. 1963) (holding the petitioner had been properly convicted of two assaults where the petitioner and his co-defendant (Ladner) shot "as many as five shots" at two officers).

---

guard and moments later a second guard was injured on the corner of the bed); *United States v. Theriault*, 531 F.2d 281, 285 (5th Cir. 1976) (holding that the defendant's act of "hurling himself over the front seat of the vehicle and into the steering wheel, thereby causing the accident and injuries to the two officers," was one act and thus defendant could only be convicted of one assault count); *United States v. Alexander*, 471 F.2d 923, 933 (D.C. Cir. 1972) (holding, in a case in which the defendant pointed a gun at a group of people, "where by a single act or course of action a defendant has put in fear different members of a group towards which the action is collectively directed, he is guilty of but one offense"); *United States v. Hodges*, 436 F.2d 676, 677–78 (10th Cir. 1971) (affirming multiple assault convictions where defendants struck or kicked officers, giving each officer individual attention).

We therefore conclude that Voris fails to show that the district court erred, let alone plainly erred, in entering judgment on the four assault convictions based on the four shots he fired toward the door.

Based on the above, we reverse one assault conviction. And because each assault conviction served as a predicate offense for each § 924(c) conviction, we also reverse one § 924(c) conviction. *See United States v. Smith*, 924 F.2d 889, 894 (9th Cir. 1991) ("[E]ach 924(c)(1) count must be supported by a separate predicate offense . . . ."). We remand to the district court with instructions to vacate one § 111 conviction and one § 924(c) conviction and resentence Voris accordingly. *See Chilaca*, 909 F.3d at 296–97 (holding that the appropriate remedy for meritorious multiplicity claims is to remand for the district court to vacate the multiplicitous convictions and resentence the defendant).[4]

## B. Section 924(c) Convictions

Section 924(c)(1)(A) provides that "any person who, during and in relation to any crime of violence . . . *uses* or carries *a firearm* . . . shall, in addition to the punishment provided for such crime of violence . . . if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C. § 924(c)(1)(A)(iii) (emphasis added). Voris argues that we should interpret this statute as requiring a separate firearm use to support each § 924(c)

---

[4] We note that the district court should exercise its discretion in determining which § 111 conviction and § 924(c) conviction should be vacated. *See Ball v. United States*, 470 U.S. 856, 864 (1985) ("[T]he only remedy consistent with the congressional intent is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions.").

conviction. If the statute requires a separate firearm use for each conviction, then according to Voris, he can be convicted of only one § 924(c) count for the shots he fired toward the door because he only *used* his firearm once (though he fired four shots).

Voris relies on out-of-circuit cases that have interpreted § 924(c) as requiring a separate firearm use for each § 924(c) conviction.**5** We note that none of these cases considered

---

**5** *See United States v. Jackson*, 918 F.3d 467, 492–94 (6th Cir. 2019) (vacating one § 924(c) offense and leaving only one such offense standing when the defendant made a single choice to use a gun by placing it at one victim's head); *United States v. Rentz*, 777 F.3d 1105, 1115 (10th Cir. 2015) (en banc) (Gorsuch, J.) (holding that "each [§ 924(c)(1)(A)] charge requires an independent use, carry, or possession," and thus the defendant could be convicted of only one § 924(c) charge when he fired a single shot that injured one victim and killed another); *United States v. Cureton*, 739 F.3d 1032, 1039–45 (7th Cir. 2014) (vacating one § 924(c) conviction and leaving only one such conviction in place when the defendant "pointed a single gun at [the victim] a single time"); *United States v. Phipps*, 319 F.3d 177, 186–89 (5th Cir. 2003) (vacating one § 924(c) conviction and leaving only one such conviction in place when the defendants used a firearm only once by putting it to the victim's head); *United States v. Finley*, 245 F.3d 199, 206–08 (2d Cir. 2001) (holding a defendant could not be punished twice under § 924(c) "for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct"); *United States v. Wilson*, 160 F.3d 732, 749–50 (D.C. Cir. 1998) (vacating one § 924(c) conviction and leaving only one such conviction standing where it was undisputed that the defendant used his firearm once, albeit repeatedly, to kill one victim).

Voris also claims that *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), supports that multiple discharges of a firearm must be considered a single use. The issue in *Barrett*, however, was whether the offenses underlying each § 924(c) count were distinct crimes. *Id.* at 1095–96. We also note that in *Barrett* the court affirmed multiple

whether multiple successive shots fired at multiple victims must be considered a single use of a firearm limiting the government to one § 924(c) conviction.

The government argues that Voris's position is foreclosed by Ninth Circuit precedent. The Ninth Circuit cases cited by the government establish that separate, properly charged predicate offenses can support multiple § 924(c) convictions, but they do not specifically address the precise issue raised by Voris—whether § 924(c) requires that each § 924(c) charge be based on a separate firearm *use*. For example, in *United States v. Andrews*, 75 F.3d 552 (9th Cir. 1996), one defendant argued that she could be convicted of only one § 924(c) offense because her underlying predicate offenses "occurred at virtually the same time." *Id.* at 557. We rejected her argument and held that binding precedent compelled us to affirm the multiple § 924(c) convictions because they were each based on separate offenses that were properly charged. *Id.* at 557–58. Thus, in *Andrews* we confirmed that each § 924(c) charge must be based on a separate, properly charged predicate offense. *Id.* But we did not explicitly discuss whether each § 924(c) charge must also be based on a separate firearm *use*.**[6]**

---

§ 924(c) counts even though the predicate offenses were committed "with a single, continuous use of a firearm." *Id.* at 1096.

**[6]** We note, however, that the defendant was convicted of four § 924(c) offenses even though only two firearms were used against four victims, with all shots fired within "seconds." *Andrews*, 75 F.3d at 554–55. We upheld each of the four convictions. *Id.* at 558. Though the defendant's argument was not exactly the same as Voris's, it was very similar. *See also United States v. Fontanilla*, 849 F.2d 1257, 1259 (9th Cir. 1988) (holding, in a case involving one shooting but two victims: "Because the murder and assault were properly charged as separate

In this case, the undisputed facts make clear that Voris's conduct amounts to four such "uses." Here Voris used his gun four separate times when he fired four shots toward the door—he pulled the trigger four times, in four slightly different directions, resulting in four separate discharges, and there were at least four potential victims. We must keep in mind the plain and unambiguous language of the statute— "any person who, during and in relation to *any* crime of violence . . . *uses . . . a firearm . . . shall*, *in addition to the punishment provided for such crime of violence . . . if the firearm is discharged*, be sentenced to a term of imprisonment . . . ." 18 U.S.C. § 924(c)(1)(A)(iii) (emphasis added). Discharge is "a type of use" under the statute, *United States v. Beaudion*, 416 F.3d 965, 969 (9th Cir. 2005), and Voris clearly discharged his firearm four times in committing four crimes of violence, and it makes no difference that the shots were quickly fired.[7] Because each discharge here may be considered a use within the meaning of the statute, it was appropriate to charge Voris with four § 924(c) offenses based on the four shots he fired toward the door.[8] The plain and unambiguous language of § 924(c)(1)(A) compels affirmance, and our decision is

---

crimes, it was permissible to charge appellant with a separate firearm charge for each crime").

[7] *See also Bailey v. United States*, 516 U.S. 137, 148 (1995) ("The active-employment understanding of 'use' certainly includes[,] . . . most obviously, firing . . . a firearm."), *superseded by statute as stated in Welch v. United States*, 136 S. Ct. 1257, 1267 (2016).

[8] Because there were multiple choices and acts here, we express no view on whether multiple discharges from a firearm claimed to have resulted from one act could support multiple § 924(c) charges.

entirely consistent with the conclusions reached by our sister circuits.

## C.  Section 403 of the First Step Act

When the district court sentenced Voris, § 924(c)(1)(C) provided that a 25-year enhancement applied to each "second or subsequent [§ 924(c)] conviction."   18 U.S.C. § 924(c)(1)(C) (2006).  The 25-year enhancement(s) applied even when all the defendant's § 924(c) convictions arose in the same proceeding.  *See Deal v. United States*, 508 U.S. 129, 131–32 (1993).

On December 21, 2018—after the district court sentenced Voris and while this appeal was pending— Congress enacted the First Step Act.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  Section 403 of the Act amended § 924(c)(1)(C) so that the 25-year enhancement applies only "after a prior conviction under this subsection has become final."   *Id.* § 403(a), 132 Stat. at 5221–22.   Thus, the 25-year enhancement no longer applies when all of a defendant's § 924(c) convictions arise in the same proceeding.  If § 403 applied here, Voris's sentence for the five properly charged § 924(c) counts would have been 50 years, instead of 110 years.[9]

Voris argues that he is entitled to resentencing under the First Step Act because § 403 applies to cases pending on appeal when the Act became law.  Congress, however, expressly limited the retroactive application of § 403. Section 403(b) of the Act provides:  "This section [403], and

[9] Voris would have been sentenced to 10-year consecutive sentences for each § 924(c) conviction instead of a 10-year sentence for his first § 924(c) conviction and 25-year consecutive sentences for each of the remaining § 924(c) convictions.  *See* 18 U.S.C. § 924(c)(1)(A)(iii), (C).

the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*."  § 403(b), 132 Stat. at 5222 (emphasis added).

Statutory terms are normally given their "ordinary meaning" if they are not defined in the statute.  *FCC v. AT & T Inc.*, 562 U.S. 397, 403 (2011) (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)).  "Generally a sentence is deemed imposed when it is announced by the district judge in open court . . . ."  *United States v. Colace*, 126 F.3d 1229, 1231 (9th Cir. 1997).  Other circuits have similarly concluded that a sentence is "imposed" under § 403(b) when the district court sentences the defendant.  *See United States v. Cruz-Rivera*, 954 F.3d 410, 413 (1st Cir. 2020) (order); *United States v. Jordan*, 952 F.3d 160, 172 (4th Cir. 2020); *United States v. Hodge*, 948 F.3d 160, 163–64 (3d Cir. 2020); *United States v. Richardson*, 948 F.3d 733, 748–50 (6th Cir. 2020).

Indeed, "Congress has repeatedly used derivations of the word 'impose' to denote the moment that the district court delivers the defendant's sentence."  *Richardson*, 948 F.3d at 748–49 (citing, for example, 18 U.S.C. § 3742(a), which allows for review of a sentence "imposed in violation of law" and 18 U.S.C. § 3553(a), which instructs district courts to consider certain factors in "imposing a sentence"); *see also, e.g.*, Fed. R. Crim. P. 32(b)(1) ("The court must impose sentence without unnecessary delay.").

Voris argues that we should interpret "imposed" in § 403(b) as "finally imposed."[10]    This argument is unavailing given the text of § 403(b) and the ordinary meaning of "imposed" in the criminal sentencing context. Further, Congress knew exactly how to write the statute Voris contends it did write here.[11] "Congress *did* use finality as a marker in the immediately preceding section, § 403(a), amending § 924(c) so that the 25-year mandatory minimum would apply only to offenses that occur after a prior § 924(c) conviction 'become[s] *final*.'" *Jordan*, 952 F.3d at 173 (alterations in original) (quoting § 403(a), 132 Stat. at 5222); *see also Cruz-Rivera*, 954 F.3d at 413 (reasoning that Congress knew how to make finality the key in § 403(b) because it did so in other parts of the First Step Act); *Hodge*, 948 F.3d at 163 (same).

We reject Voris's remaining arguments, as they would require us to ignore the plain unambiguous language of § 403(b) and turn to other statutory interpretation rules. *See Caminetti v. United States*, 242 U.S. 470, 485 (1917)

---

[10] Voris contends that a Sixth Circuit case, *United States v. Clark*, 110 F.3d 15 (6th Cir. 1997), *superseded by regulation on other grounds*, supports that a sentence is not "imposed" under § 403(b) until it has been decided on appeal. The Sixth Circuit, however, recently rejected this argument and held that a sentence is "imposed" under § 403(b) when pronounced in the district court. *Richardson*, 948 F.3d at 748–53. In *Richardson*, the court refused to extend *Clark* to the First Step Act and even questioned whether *Clark* remains (or ever was) good law. *Id.* at 750–53. We do not find Voris's reliance on *Clark* persuasive.

[11] For example, Congress could have used "become final" instead of "been imposed," in which case the statute would have provided: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not *become final* as of such date of enactment."

("Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.").

For the reasons stated above, we hold that § 403 of the First Step Act does not apply to cases pending on appeal in which the district court sentenced the defendant before the enactment of the First Step Act. Voris therefore is not entitled to resentencing under the First Step Act in this appeal.[12]

## D.  Motions for a Mistrial and New Trial

Voris's final argument is that the district court abused its discretion by denying his motions for a mistrial and new trial based on Officer Smith's testimony. He asserts that Officer Smith's testimony about his "criminal history" and other testimony about the precautions taken by the Task Force were highly prejudicial because they suggested to the jury that Voris was a violent and dangerous criminal. The government concedes that the "criminal history" remark was improper character evidence under Fed. R. Evid. 404(a).

Voris relies on two cases to show that the district court abused its discretion, *United States v. Dorsey*, 677 F.3d 944 (9th Cir. 2012), and *United States v. Escalante*, 637 F.2d 1197 (9th Cir. 1980). *Dorsey* and *Escalante*, however, do

---

[12] We note that neither Voris nor the government has addressed the question of whether the First Step Act might apply on resentencing. *See, e.g.*, *United States v. Jackson*, No. 1:15 CR 453-001, 2019 WL 2524786 (N.D. Ohio June 18, 2019) (order), *appeal docketed*, 19-3711 (6th Cir. July 29, 2019). We express no view on this issue.

not support Voris's position because they did not involve analogous circumstances.

This case is more like *United States v. Monks*, 774 F.2d 945 (9th Cir. 1985), where we affirmed a denial of a mistrial because the prejudice resulting from improper testimony was "minimal," and the defendant had rejected the court's offer to give a limiting instruction. *Id.* at 955. In *Monks*, the district court denied a mistrial motion based on two witnesses' references to photo line-up pictures (which included a picture of the defendant) as "mugshots." *Id.* at 954. We held that the district court did not abuse its discretion by denying the motion because the resulting prejudice from the improper character evidence was minimal and defense counsel declined a limiting instruction because he felt it would draw more attention to the improper evidence. *Id.* at 955. We determined that the prejudice was minimal because, among other things, the improper references were brief and were never discussed in front of the jury, the term "mugshots" was ambiguous, and there was substantial evidence linking the defendant to the crime. *Id.*

*Monks* supports that the district court here did not abuse its discretion. Though the district court did not offer to give a limiting instruction, Voris did not ask for one and did not object when the court decided that a limiting instruction would be improper because it would highlight the testimony. Nor does Voris argue on appeal that the district court should have given a limiting instruction. He has thus tacitly conceded that the district court's decision not to give a limiting instruction was proper because it would have drawn more attention to the improper evidence.

Also like in *Monks*, any prejudice from Officer Smith's improper testimony was minimal. The "criminal history" remark was brief and vague, as it did not specifically identify

Voris's criminal history. The government also minimized any prejudice by immediately redirecting Officer Smith's testimony. And the jurors knew that Voris had a criminal history because they knew he was a convicted felon and that there was a warrant for his arrest.

Finally, we note that the evidence against Voris was very strong. Voris shot at Officer Garcia after Officer Garcia identified himself as a police officer and Voris shot four times toward the door knowing that officers were standing outside the door. An officer also testified that almost immediately after the incident Voris admitted that he had shot at the marshals and asked what charges he would be facing. The jury also watched Voris's recorded post-arrest interview in which he stated that he intended to die that day and that "at the end of the day I didn't give a f*** about those f***ing Marshals or anything . . . ."

Given the circumstances and the evidence, any resulting prejudice from the improper testimony was minimal. We therefore hold that the district court did not abuse its discretion in denying the motions for a mistrial and new trial.

## IV. Conclusion

In sum, we conclude that one assault conviction and one § 924(c) conviction must be reversed, and we reject Voris's remaining arguments. We thus remand to the district court with instructions to vacate one assault conviction and one § 924(c) conviction and resentence Voris.

**REVERSED in part and REMANDED with instructions.**